**REFLING v. BURNET, Commissioner of Internal Revenue.**

**No. 8919.**

Circuit Court of Appeals, Eighth Circuit. March 4, 1931.

Robert A. Littleton and W. W. Spalding, both of Washington, D. C., for petitioner.

J. P. Jackson, Sp. Asst. to the Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to the Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before KENYON and GARDNER, Circuit Judges, and MUNGER, District Judge.

GARDNER, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals, which found the estate of Harold Thorson liable for a deficiency in income tax for the year 1922 in the sum of $939.67. The record as certified does not contain the evidence, and hence the question presented is whether or not the order of determination is sustained by the findings of the Board.

It is recited in the record that the facts were stipulated, but the stipulation is not shown in the record. It appears from the findings that during the years 1921 and 1922 the estate of Harold Thorson held certain funds, securities, real estate, and other assets vested in it for administration under the will of Harold Thorson, deceased; that during these years the entire activities of the estate consisted in the liquidation of certain of such assets, the investment of the proceeds of liquidation and of the income therefrom, and such other activities as are required by law in connection with the administration of an estate. It is admitted by both parties that the determination of the Board was correct, unless the executor, or, as stated in the briefs of counsel, the "taxpayer estate," was engaged in a trade or business within the meaning of that term as used in section 204(a) of the Revenue Act of 1921.

The gross income for the petitioner during the year 1921 was $41,358.85, while his expenditures for that year were $64,943.25, leaving a net loss for the year 1921 of $23,584.40. For the year 1922 the gross income received from the estate amounted to $21,656.53, and the gross expenditures were $7,212.17, leaving a net income for 1922 of $14,443.81. If the net loss sustained by the petitioner for the year 1921 is allowable as a deduction for the year 1922, then no deficiency tax was due for 1922. As above suggested, the solution of this question is dependent upon whether or not the executor was, during the years in question, engaged in a "trade or business," within the meaning of section 204 of the Revenue Act of 1921 (42 Stat. 231).

860

Section 204(a) of that act, among other things, provides as follows:

"That as used in this section the term 'net loss' means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business)" etc.

Subdivision (b) of this section provides as follows:

"If for any taxable year beginning after December 31, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be deducted from the net income of the taxpayer for the succeeding taxable year," etc.

Subdivision (c) of the section provides that:

"The benefit of this section shall be allowed to the members of a partnership and the beneficiaries of an estate or trust, and to insurance companies subject to the tax imposed by section 243 or 246, under regulations prescribed by the Commissioner with the approval of the Secretary."

The income for the year 1921, as disclosed by the findings, consisted of such items as income from liquidation on notes receivable, income from crops on farms rented out on shares, interest on bank deposits, notes, mortgages and bonds, rents, profits from sale of real estate, profits from sale of securities and dividends from stock, and the deductions or expenditures for that year consisted of such items as federal estate tax, personal property tax, real estate taxes, interest on legacies, interest on residence taxes, interest on land contracts, salaries, revenue stamps, attorney fees, recording fees, upkeep on farms, commission on sales, repairs, accountant's fees, and sundries. For the year 1922 the gross income consisted of interest on bank deposits, notes, mortgages and corporation bonds, rents and royalties, profit from sale of real estate, stocks, bonds, etc., dividends on stock of domestic corporations, notes receivable paid in excess of probate appraisal, sale of crops, and sale of hunting licenses.

▇▇ As has already been observed, the Board found as a fact that during these two years the entire activities of the estate consisted of the liquidation of certain of such assets and the investment of the proceeds of liquidation and of the income therefrom, and such other activities as are required by law in

connection with the administration of an estate. This finding of fact is presumptively correct, and, even if the evidence was before us, it would not be the province of this court to determine its weight, but only to determine whether or not the findings were sustained by substantial evidence. Denver Live Stock Comm. Co. v. Commissioner of Internal Revenue (C. C. A.) 29 F.(2d) 543; Ox Fibre Brush Co. v. Blair, Commissioner (C. C. A.) 32 F.(2d) 42, 68 A. L. R. 696; Atlantic Coast Distributors v. Commissioner of Internal Revenue (C. C. A.) 33 F.(2d) 733; Franciscus Realty Co. v. Commissioner of Internal Revenue (C. C. A.) 39 F.(2d) 583; American Land & Investment Co. v. Commissioner of Internal Revenue (C. C. A.) 40 F.(2d) 336.

It is the contention of the petitioner that the character of the income received and of the deductions allowed conclusively shows that the estate was carrying on a trade or business within the provisions of the above-quoted statute. We are not impressed with this argument. The receipts and disbursements are as consistent with the ordinary liquidation of a solvent estate as with an ordinary business. Manifestly, it was the business of the executor to administer the estate by liquidation thereof; at least, the Board so found, and there is nothing in the record to overcome the presumption of the correctness of this finding.

It remains to consider whether or not the business of the administrator of an estate constitutes the carrying on of a trade or business. It is conceivable that the provisions of a will might be such as to authorize the executor to continue to carry on the business of the deceased, but this at least would be an extraordinary provision, and we cannot presume, in the face of these findings, that the will in the instant case contained any such provision. The statute is restricted in its application to those regularly engaged in business, while it is the business of a personal representative to administer and wind up the affairs of the deceased. In the case of Blair v. Wilson Syndicate Trust, 39 F.(2d) 43, 45, decided by the Circuit Court of Appeals for the Fifth Circuit, the court considered the question as to whether the taxpayer was conducting a business, and, among other things, it is there said:

" * * * It may be considered settled, within the meaning of the taxing laws, that, if a corporation is doing that for which it was organized, for the purpose of earning profit, very slight activity is sufficient to constitute

the doing of business. Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. On the other hand, if a corporation is not organized for profit, but merely to hold real estate for ultimate disposal and liquidation, it is not doing business, although it incidentally collects the rents and distributes them. Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428; United States v. Emery, etc., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825. * * *

"Such slight business activities as the trustee conducted were in furtherance of the ultimate purpose of liquidation and distribution."

See, also, Crocker v. Malley, 249 U. S. 223, 39 S. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601; Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949; Burk-Waggoner Oil Ass'n v. Hopkins, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183; United States v. Emery, etc., Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825; McCoach v. Minehill & S. H. R. Co., 228 U. S. 295, 33 S. Ct. 419, 424, 57 L. Ed. 842; Hughes v. Commissioner (C. C. A.) 38 F.(2d) 755.

In McCoach v. Minehill & S. H. R. Co., supra, the court held that a railway corporation which had leased its railroad to another company, but still maintained its corporate existence and collected and distributed to its stockholders the rental from the leases and also dividends from investments, was not doing business within the meaning of the Corporate Tax Act. In the course of the opinion it is said:

"In our opinion the mere receipt of income from the property leased (the property being used in business by the lessee, and not by the lessor) and the receipt of interest and dividends from invested funds, bank balances, and the like, and the distribution thereof among the stockholders of the Minehill Company, amount to no more than receiving the ordinary fruits that arise from the ownership of property."

In the article on Executors and Administrators, 24 C. J. 55, the general rule with reference to the duties of an executor engaging in business is stated as follows:

"The general rule is that an executor or administrator is not justified in placing or leaving assets in trade, for this is a hazardous use to permit of trust moneys, and trading lies outside the scope of administrative functions."

See, also, Lovewell v. Schoolfield et al. (C. C. A.) 217 F. 689; Gum v. Frost (D. C.) 4 F. 745.

It has been an early and consistent view of the law that the carrying on of a trade or business is outside of the legitimate scope of the duties of an executor or administrator, and we must presume that, when these words were written in to the statutes, their then accepted meaning was well understood. As said by this court in United States v. Trans-Missouri Freight Ass'n et al., 58 F. 58, 67, 24 L. R. A. 73, in an opinion by Judge Sanborn:

"Where words have acquired a well-understood meaning by judicial interpretation, it is to be presumed that they are used in that sense in a subsequent statute, unless the contrary clearly appears."

We are of the view that the words "trade or business regularly carried on," as used in the statute, do not include the functions or activities of an executor in liquidating and administering upon an estate.

The determination of the Board was therefore correct, and the petition for review should be, and is, dismissed.