## AMES v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8988.

Circuit Court of Appeals, Eighth Circuit.
April 18, 1931.

Charles W. Briggs, of St. Paul, Minn. (Clapp, Richardson, Elmquist, Briggs & Macartney, of St. Paul, Minn., on the brief), for petitioner.

J. P. Jackson, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Dean P. Kimball, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before STONE and GARDNER, Circuit Judges, and WOODROUGH, District Judge.

WOODROUGH, District Judge.

This case is before us on petition for review of the decision of the United States Board of Tax Appeals. The Commissioner of Internal Revenue refused to allow as a deduction from the gross income of the estate of Charles W. Ames, deceased, for the year 1922, the sum of $11,837.05, which the estate claimed by reason of the fact that in that year it had turned over to certain employees of the American Law Book Company stock owned by the estate worth $11,837.05. The Board of Tax Appeals found that Charles W. Ames died testate April 3, 1921, and by his will disposed of a large and complicated estate made up largely of stocks and bonds. The bulk of the devised property consisted of stocks of the West Publishing

Company, the American Law Book Company, and the Diamond Ranch, appraised for administrative purposes in the respective amounts of $264,000, $118,401, and $51,445.50. Other items made up the total appraised value of $711,289.34. In 1916, certain stockholders of the American Law Book Company, including said Charles W. Ames, held 776 shares of the common and 2 shares of the preferred stock of the company under a syndicate arrangement. On November 2d of that year they entered into a written agreement with certain of the active managing employees of the company to the effect that such employees at the end of a term first fixed at five years, and later extended to six years, were to receive 10 per cent. of the stock of the company which was held by the syndicate, upon the condition that the company paid dividends equal to 500 per cent. of the outstanding stock of the American Law Book Company within the six-year period. The distribution of dividends in the amount of 500 per cent. of the par value of the American Law Book Company's outstanding stock was completed in 1922, and pursuant to the agreement 10 per cent. of the stock so held by the syndicate was delivered to the named employees in 1922 at a cost to the estate of $11,837.05.

The executor of the estate of Ames claimed deduction for this amount as a business expense under section 214 (a) of the Revenue Act of 1921 (42 Stat. 239) which in part reads as follows:

"That in computing net income there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered."

Though Charles W. Ames died April 3, 1921, his executors found that they were unable to settle the estate within the time limited, two extensions of time were granted by the probate court of Ramsey county, Minn., where the estate was being administered, and final decree in the matter of the estate was entered on or about May 1, 1925. During the period of administration the executors, in order to conserve the property, bought and sold securities in the name and on behalf of the estate, maintained an office and incurred expense in connection therewith, and employed the Northwestern Trust Company of St. Paul as their agent to take care of all the business of the estate, keep the books of account on a cash basis, handle its securities, look after and advise with the trustees as to investments and reinvestments, collect all income, and make all disbursements for the estate.

On appeal to the Board of Tax Appeals that board sustained the decision of the Commissioner of Internal Revenue, holding that the deduction claimed was not an expense incurred in carrying on a trade or business, and said: "The surrender of the stock in question was a capital transaction designed permanently to increase the value of the stock remaining in the executor's hands rather than an expense incidental to the production of income in the taxable year 1922."

At the threshold of this inquiry it is necessary to consider whether or not the petitioner was engaged in a trade or business in relation to which the disbursement of the $11,837.05 worth of stock could be deemed to be an expense. Whatever rights Mr. Ames had in the shares of stock in the law book company at the time of his death were vested thereafter in his executors. An incident to the decedent's rights in and to the stock was the obligation he had entered into to surrender the percentage of the stock to the operating officers of the corporation if certain conditions were satisfied. All the executors had to do in relation to the law book company stock was to receive the dividends as paid, fulfill this contract obligation when it matured, and distribute the estate according to the will. There were some other properties belonging to the estate as to which it appears from the findings that some business was carried on, but none so far as the law book company stock was concerned. The stock was merely a part of the estate in process of liquidation, and the ordinary processes of liquidation carried on by the executor of an estate are not such activities as constitute trade or business.

Petitioner cites the decision of the Board of Tax Appeals in the case of Le Blanc v. Commissioner, 7 B. T. A. 256. In that case the taxpayer caused the income of his stockholdings in a certain corporation to be paid over to his son as a means of compensating his son for services to be rendered to protect the taxpayer's own business position and to advance the taxpayer's interest in his business. But there was no such furthering of any trade or business by the executors in this case when they simply took the stock and received dividends thereon and fulfilled a contract obligation imposed on them by their decedent, and pursuant to the decedent's

contract made a surrender of the part of the stock which decedent had contracted to surrender. Activities of such a taxpayer as an executor, if carried on for the purpose of earning profits may become sufficient to constitute the doing of business, but the execution of his trust by the executor of an estate in the ordinary way of gathering in, administering upon, and distributing the assets should not be so construed. The mere receipt of dividends and the payment of contractual debts shown in this case are but the ordinary incidents of the execution of his trust by an executor. Blair v. Wilson Syndicate Trust (C. C. A.) 39 F.(2d) 43; Crocker v. Malley, 249 U. S. 223, 39 S. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601; United States v. Emery, 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825; McCoach v. Minehill Railway Co., 228 U. S. 295, 33 S. Ct. 419, 57 L. Ed. 842; Hughes v. Comm. of Internal Revenue (C. C. A.) 38 F.(2d) 755; Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428; 24 C. J. 55; O. A. Refling, Executor, v. David Burnet, Commissioner, 47 F.(2d) 859, this court.

██ Petitioner calls attention to the fact, not found by the Board of Tax Appeals but disclosed by the evidence before it, that the 500 per cent. dividends paid by the law book company were derived largely from liquidation of the company's great accumulation of bills receivable rather than directly from new or increased earnings of the company. The argument proceeds that the stock payment to the operating officers of the law book company was really to induce them to devote their energies to liquidating the company's bills receivable solely as a means to produce cash income in the form of dividends rather than to increase the value of the stock in a permanent way. There was also oral evidence before the board that the great accumulation of receivables by the corporation and the desirability of the reduction in that account was in the minds of the parties at the time the contract was entered into and undoubtedly figured as an inducement.

But the written contract with the operating officers did not limit them to procuring the payment of dividends through the bills receivable. The only condition of the contract with the operating officers of the company was that they were to procure the payment of the dividends by the company. They were given a great inducement to increased zeal and energy to bring about that result. The value of stock in corporations actively carrying on such a business as that of the law book company is ordinarily enhanced when large dividends are paid thereon for a number of years. The board had before it the contract and the circumstances under which the contract was made as well as the financial statements of the company covering its profits, dividends, surpluses, and receivables. Though the shrinkage shown in surpluses and receivables corroborates that the success of the officers in procuring the dividends to be paid by the company was made possible by the successful liquidation of receivables, that fact does not compel disregard of the terms of the contract, nor does it establish that such outcome was the sole purpose of the contract. In other words, the conclusion of the board that there was a purpose in the contract to permanently increase the value of the stock by making it productive of dividends is not refuted by the showing that in the working out of the contract nothing more may have been done than to convert receivables into cash and then into dividends. The specific terms of the written contract and the stock surrender made pursuant thereto support the opinion of the board, and its decision may not be reversed because other and different conclusions might have been drawn from the evidence before it.

██ The question whether the taxpayer sustained the burden of showing that the disbursement made by the operating officers of the company by the executors was a necessary or ordinary and reasonable one need not be passed on, as we are satisfied that it was not a business expense within the statute, and that there was substantial evidence to support the conclusion arrived at by the board.

The decision should be affirmed.