## CLEMENTS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10751.

Circuit Court of Appeals, Eighth Circuit.

March 24, 1937.

Chase Morsey, of St. Louis, Mo., for petitioner.

Warren F. Wattles, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

This is a petition by Kate E. Clements to review the decision of the Board of Tax Appeals (July 2, 1935, unreported) affirming a deficiency in tax of $5,978.56 assessed against her for the calendar year 1929. It appears that the petitioner inherited 265 shares of the stock of the Christy Fire Clay Company and 15 shares of the stock of the Ellenwood Land Company, both "family concerns," upon the death of her husband in March, 1897. Following her husband's death, and under direction of the probate court having jurisdiction over his estate, the petitioner paid $10,000 for 100 more shares of Christy Fire Clay Company stock for which her husband had subscribed during his life.

On June 26, 1907, the two corporations, together with a third corporation and two individuals, conveyed various properties to one Russell, who, on the same day, conveyed them to a new corporation, Laclede-Christy Clay Products Company, for shares of its stock issued to the stockholders of the corporate transferors of the property and to the two individual transferors. For her stock interest in the two companies the petitioner received 2,180 shares of the 6 per cent. cumulative preferred stock and 394.2 shares of the common stock of the Laclede-Christy Clay Products Company, each of the shares having a par value of $100.

By July 1, 1911, the Laclede-Christy Clay Products Company had become indebted to the holders of its preferred stock for three and a half years unpaid dividends in the amount of $525,000 and desired to change its capital structure. At that time, and continuously since the corporation's organization in 1907, there were 25,000 shares of the corporation's preferred stock and 12,500 shares of its common stock outstanding. The amount of the unpaid dividends upon the petitioner's preferred stock by July 1, 1911, was $45,780. In January, 1912, the Laclede-Christy Clay Products Company was recapitalized. Each stockholder surrendered his old stock to the corporation and received new stock. For each share of old common stock so surrendered he received two-fifths (40/100) of a share of new common stock, and for each share of old preferred stock, and in satisfaction of the accumulated balance of unpaid dividends thereon, he received two-fifths (40/100) of a share of the new 7 per cent. noncumulative preferred stock and 68/100 of a share of the new common stock of the company. All the new stock had a par value of $100 per share. The result of the 1912 recapitalization was that the Laclede-Christy Clay Products Company thereafter had outstanding 10,-

000 shares of noncumulative 7 per cent. preferred stock and 22,000 shares of common stock. The cumulative preferred stock was withdrawn and the proportion of preferred to common stock was reduced. The petitioner received 157.68 shares of new common stock for her 394.2 shares of old common, and 872 shares of new preferred, plus 1,482.4 shares of new common, for her 2,180 shares of old preferred.

In 1929 the petitioner sold 1,000 shares of the common stock of the Laclede-Christy Clay Products Company for $100,-000 and the Commissioner, having valued the shares at $50,000 at March 1, 1913, concluded there was a gain of $50,000 and determined deficiency accordingly. The petitioner had reported loss instead of gain upon the sale of the 1,000 shares. She petitioned the Board of Tax Appeals for redetermination on the ground that the cost to her of the 1,000 shares of stock acquired by her in 1912 and sold in 1929 was greater than the value of such stock at March 1, 1913. Revenue Act of 1928, c. 852, 45 Stat. 791, 818, 821, § 113(b) (1, 2), 26 U.S.C.A. § 113 note.

The Board of Tax Appeals held that the cost to her of the 1,000 shares of common stock was to be determined by ascertaining the fair market value of the old stock she surrendered in the 1912 recapitalization. That would show the cost to her of the total of both classes of new stock she acquired. The Board held further that an apportionment of the total cost of both classes of stock had to be made on the basis of the respective value of the two classes of new stock so as to allocate to each stock its particular cost.

It appeared that up to the recapitalization of the Laclede Christy Clay Products Company in January, 1912, all of the stocks of the company were "closely held" and, "there was no free market for the stock." After the change in the capital structure, the stock "was listed and then it became more active." But there is no evidence of general dealing in the stocks at at any time close to 1913.

The Board found that there had been some sales of the old common and old preferred stock and it determined on the basis of the sales a value of $21 per share for the old common stock and $100 per share for the old preferred stock on the eve of the 1912 recapitalization. From such values the total cost of all the new stock issued to petitioner could easily be computed, but the Board was of opinion that there was no proof in the record upon which it could base an apportionment "as between the two types of new stock received by the petitioner in the exchange," and that therefore, "it was unable to find or fix the cost to petitioner of the 1,000 shares of new common stock which was sold and is in question here:" It held that the burden of proof was upon the petitioner, that she had not sustained the burden, and that she had not shown that the cost to her was greater than the March 1, 1913, value. Redetermination was accordingly denied.

It is contended for the government that the recapitalization of the Laclede-Christy corporation in 1912 did not affect the cost to petitioner of her total new stock in the company and that the basis of the total cost of such new stock was the value of her original investment in the company in 1907 (i. e., her 365 shares of Christy Fire Clay stock and 15 shares of Ellenwood Land Company stock). Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, and Weiss v. Stearn, 265 U. S. 242, 44 S.Ct. 490, 68 L.Ed. 1001, 33 A. L.R. 520, are cited. It is argued that the conclusion of the Board of Tax Appeals should be sustained (among other things) because the petitioner did not prove the value of the property which she originally gave for her old stock in the Laclede-Christy corporation.

But the interest of each stockholder in the business and assets of the corporation of the Laclede-Christy Clay Products Company was essentially different after the recapitalization of that corporation from what it was before. The old cumulative 6 per cent. preferred stock gave the holder particular rights against the company, and the new noncumulative preferred stock at 7 per cent. entailed different obligations upon the corporation, and the rights of the holder were substantially different. The exchange of 394.2 shares of old common stock for 157.68 shares of new common stock was only one incident of the exchange. Upon consideration of a closely analogous situation this court concluded, after reviewing the precedents, in Burnet v. Kountze, 66 F.(2d) 141, that, where the financial structure of a corporation had been so materially changed upon exchange of old stock for new that the interest of each stockholder became essentially different from what it had been before the exchange, the cost to the stock-

holder of the old stock did not afford the basis of cost for determining taxable gains of a stockholder selling the new stock at a later date. The Board of Tax Appeals rightly determined that "the cost of the new securities to the petitioner is the fair market value, at the date of the exchange (January, 1912), of the property given in exchange for them."

On the other hand, we think the facts found by the Board show with reasonable certainty that the assessment which was made on the basis of a value of $50 per share for the new common stock at March 1, 1913, was "arbitrary and excessive." It appears that on the eve of recapitalization the petitioner had 2,180 shares of 6 per cent. cumulative preferred stock and that on recapitalization she received therefor 872 shares of new noncumulative 7 per cent. preferred stock and 1,482.4 shares of new common stock. Both the old and the new preferred stocks were of the par value of $100 per share. The Board found the old preferred with three and a half years accumulated dividends ($45,780) was of the value of $100 per share on the eve of recapitalization. There is nothing to indicate that the new noncumulative preferred stock could have had a value greatly in excess of $100 per share. Consequently, as the petitioner's old preferred was worth $218,000 and as she got only 872 shares of new preferred, her 1,482.4 shares of new common must have cost her somewhere around the difference between $218,000 and $87,200, that is, $130,000, or approximately $88 per share. (The transfer which the petitioner made of old common stock for new common stock was declared by the Board not to be "a fair basis for determining the whole cost of the new common stock" and may be disregarded as to this particular computation.)

It is true that the petitioner did not prove facts sufficient to enable the Board to make an accurate apportionment or to find the precise amount of tax due from her, but it does not follow that she was not entitled to relief from the wrongful assessment made against her. Under very similar circumstances, presented to the Circuit Court of Appeals in the Second Circuit, it was held that, where the refusal of the Board of Tax Appeals to make an apportionment of value between stocks of different classes left the taxpayer to pay an "arbitrary and excessive" tax, it was the duty of the court to reverse and remand for further proceedings. Taylor v.

Commissioner (C.C.A.) 70 F.(2d) 619. The position of the Court of Appeals was fully sustained by the Supreme Court on certiorari. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623.

As the decision of the Board of Tax Appeals in this case leaves the petitioner to pay a tax which appears to be "arbitrary and excessive" on the facts found by the Board, the decision is reversed and the case is remanded with directions to the Board to proceed to final decision in accordance herewith and to make apportionment as between the two types of new stock, received by petitioner in the exchange, upon the basis of the respective values of the two classes of new stock received. The Board should consider the testimony already taken and such further competent testimony as may be offered. If it shall be impracticable to make apportionment, regard may be had to Regulations 74, art. 58. Helvering v. Taylor, supra.