**ADAMS v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 11557.**

Circuit Court of Appeals, Eighth Circuit.
March 26, 1940.

D. S. Holmes, of Duluth, Minn. (R. L. Mayall, of Duluth, Minn., on the brief), for petitioner.

Harry Marselli, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Arthur A. Armstrong, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

Cuyler Adams died November 29, 1932. His estate was in administration, up to this hearing before the Board of Tax Appeals. In the estate tax returns for the several years 1933 to 1936 (both inclusive) certain deductions were claimed for "administration expenses". Portions of these claimed deductions were disallowed by the Commissioner, apparently upon the ground that such portions were not truly "administration expenses", but were incurred in course of a prolonged administration in connection with carrying on a business and were incurred in execution of duties in the nature of a testamentary trust. From an order of the Board affirming this action of the Commissioner, the taxpayer brings this review. The sole question here is the propriety of this disallowance.

The disallowed amounts were procured through allocation of percentages of certain expense items to allowance and to disallowance. Petitioner does not contend that the evidence justifies an attack upon the percentage basis of disallowance. His contention is that no disallowance whatsoever is justified. Thus the issue here is reduced to the single one of whether the disallowed matters were "administration expenses" within the act (Revenue Act of 1926, Section 303 [44 Stat. 9] as amended by the Revenue Act of 1932, Section 805 [47 Stat. 169], 26 U.S.C.A.Int.Rev.Code § 812).

The holdings of the Board were: (1) that while "no specific period was designated by decedent for the postponement of distribution" yet "the effect of the provisions of his will and of the surrounding circumstances is the same"; (2) that there had been "an abnormally long period of administration"; (3) that "where, according to the provisions of the will * * *, it is necessary to continue the estate intact over a period of years, and to carry on its affairs as a business in the interim, the fees and commissions paid to representatives of the estate for such services constitute expenses, deductible for income tax purposes" and not as expenses deductible for estate tax purposes; (4) that petitioner had claimed these allowances for income tax purposes for the estate and had failed to show that such inclusion was erroneous; (5) that "expenses incurred in connection with a protracted administration, or what is in the nature of a testamentary trust" are not administration expenses.

The contentions of petitioner are that all of the disallowed items were proper "administration expenses" and that the administration was not unduly prolonged.

The contentions of respondent are (1) that where an estate is carrying on a business the expenses arising therefrom are not "administration expenses" but are expenses of activities in the nature of a testamentary trustee and that these disallowances were of this latter character; (2) that activities of an estate become such trust activities "when the time has passed within which the estate might have been expeditiously closed" and that such is the situation as to these disallowances, and (3) that these expenses were incurred in carrying out provisions of the will which, in effect, were in the nature of a testamentary trust.

The position of the Board and these opposing contentions of the parties create the situation where, in order to decide the issue whether these disallowances are "administration expenses", we must determine the underlying issues—(1) whether this administration was unduly prolonged and the legal effect thereof; (2) whether the estate was carrying on a business resulting in these expenses; and (3) whether the will created in the nature of a testamentary trust which resulted in these expenses.

1. Prolongation of Administration.

■ The prolongation of administration of an estate is a matter of concern purely of the court having the estate in charge. It is doubtless true that Congress could provide, in a taxing statute, that administration expenses should be deductible only for a specified period or only for a reasonable period, or not at all. It has not done so in the act here applicable. The Department has no authority to impose such a limitation. It has not, in fact, tried to do so. While Article 32 of Regulations 80 is relied on to have this effect and this is sought to be enforced by an expression in Article 35, those provisions are not fairly to be so construed. The mere fact alone of prolongation of administration does not, under the law here applicable, have any effect upon the propriety of the deduction here sought.

2. Carrying on Business.

■ Not all outlays authorized by the administering court or required by statute

are deductible from the gross estate for estate tax purposes. Instances of such non-deductible outlays are commissions to trustees where the executors happen to be the trustees of a portion of the property subject to administration for some purposes (Bretzfelder v. Commissioner, 2 Cir., 86 F.2d 713, 714) and State inheritance taxes where such are levied on the privilege of receipt by individual legatees (United States v. Kombst, 286 U.S. 424, 426, 52 S.Ct. 616, 76 L.Ed. 1201; Leach v. Nichols, 285 U.S. 165, 168, 169, 52 S.Ct. 338, 76 L.Ed. 681; New York Trust Co. v. Eisner, 256 U.S. 345, 350, 41 S.Ct. 506, 65 L.Ed. 963, 16 A.L.R. 660)—the basis of these decisions being that such expenditures are not for the benefit of the "estate as a whole" (New York Trust Co. v. Eisner, supra, 256 U.S. at page 350, 41 S.Ct. at page 507, 65 L.Ed. 963, 16 A.L.R. 660) but affect only individual beneficiaries or are not such "as are necessary to wind up administration of the estate and affect the estate as a whole." Bretzfelder v. Commissioner, supra, 86 F.2d at page 714.

■ Whether expenses of carrying on a business by an estate during administration are deductible has never been judicially determined. The nearest approaches to such determination are the surmise of this court that such might be true (Refling v. Burnet, 8 Cir., 47 F.2d 859, 860)[1] and a dictum that "activities of such a taxpayer as an executor, if carried on for the purpose of earning profits may become sufficient to constitute the doing of business." Ames v. Commissioner, 8 Cir., 49 F.2d 853, 855. However, both of these cases determined that "the ordinary processes of liquidation carried on by the executor of an estate are not such activities as constitute trade or business" (Ames v. Commissioner, supra, 49 F.2d at page 854); that "the execution of his trust by the executor of an estate in the ordinary way of gathering in, administering upon, and distributing the assets should not be so construed" (Id., 49 F.2d at page 855); and that "the functions or activities of an executor in liquidating and administering upon an estate" do not constitute trade or business regularly carried on as used in the taxing Acts. Refling v. Burnet, supra, 47 F.2d at page 861.

In both the Refling and Ames cases the determinations were that the expenses there involved were administration expenses because arising in the ordinary activities of an executor administering an estate. Unless the expenses here involved arose otherwise, those cases control. That matter must be resolved before we reach the existence of a situation requiring discussion of the question of the legal results of an executor carrying on a business.

The facts are undisputed. The business of decedent had been dealing in mining properties. For some years prior to death, he was "practically retired, owning certain mineral properties and real estate." He had no business office nor office employees. He kept no business records except a check book and his papers were in three or four different places.

His estate consisted very largely of real estate. This real estate consisted of some 1,500 separate parcels located in six counties in Minnesota, in three counties in Wisconsin and in one county of North Carolina. Except the North Carolina land, the remainder was mostly lands having potential or speculative mineral prospects located mainly on the Cuyuna Range. There was a fox farm. There were stocks and bonds and about $6,000 cash. There were debts (including a claim for United States income taxes) of about $78,800.

It serves no useful purpose to trace in detail the difficulties, revealed in the evidence, attending the working out of various items of this property but some things of a general character may be noted. The evidence is clear that much effort was necessarily expended in locating the assets, ascertaining the condition of title and determining the character (mineral) of these many and scattered parcels of land. The Board found that the estate consisted "mostly of assets which are not readily distributable, real estate, mining leases, etc."; and that "the mineral properties were not generally salable until some mining company was ready to take them, and the price would largely depend on what was offered." There was not sufficient cash and liquid assets to pay the debts and funeral expenses. There were several sizable items which required much effort and time to work out.[2] In short, the

---

[1] While the Refling case involved a different section of a Revenue Act, the reasoning therein is directly applicable to the situation here.

[2] Among these were a large income tax claim ($46,474.78) for a year prior to death, disposition of the fox farm, and handling of Canadian waterfront terminal

clear picture is of an estate where there were unusual difficulties in ascertaining the assets and their nature and very unusual difficulties in disposing of the bulk of the assets with any expedition. In its very nature, this estate had to be carefully "nursed" along unless it was to be sacrificed.

While the Board found that the "expenses incurred in its operation are more in the nature of ordinary expenses rather than those of an administrative nature", there is no basis in the evidence for such a finding. The expenses intended by the Board are "salaries * * * paid to office help, engineers retained regularly in the various mining ventures and fees * * * paid to lawyers and accountants on a retainer basis." All of these expense items were in connection either with the preservation or protection of the estate or with the proper course of its administration.

With one seeming but unreal exception, all transactions were for collection and protection of the estate or for realization on the assets. That exception was in certain dealings in securities. Among the assets were certain stocks. The executor, under authority of the court, sold and bought stocks. The purpose of these transactions is stated in the preamble of the authorizing order as follows: "Whereas, said executors by the terms of the will of said decedent and the prior order of this court are authorized to sell said stocks, or any part thereof; and it further appears that it is for the best interest of said estate that portions of said stocks be sold from time to time and the proceeds reinvested in common stocks listed on accredited exchanges which in the judgment of said executors afford at least equal security to the estate, to the end that said list of stocks may be more properly diversified."

The Board found that: "Pursuant to this authorization petitioner as executor sold securities in 1933 in the amount of $70,114.13, and equally substantial amounts in subsequent years. Trading was done on margin, as well as by outright purchases. Up to December 31, 1937, the total profits from such trading amounted to $55,526.02. Trading was carried on by petitioner for the purpose of realizing as much income as possible to cover operating costs and help discharge the cash bequests, and petitioner was the only employee of the estate devoting any time to it."

While investments of cash in the hands of an executor are, ordinarily, not proper, yet circumstances and situations govern. Where there is statutory authority, power given in a will, or an extended administration, investments are permissible under orders of court. Villard v. Villard, 219 N.Y. 482, 114 N.E. 789, 793; In re Clark's Will, 165 Misc. 801, 1 N.Y.S.2d 629, 632; In re Ayvazian's Estate, 153 Misc. 467, 275 N.Y.S. 123, 136; Fidelity Union Trust Co. v. Lowy, 123 N. J.Eq. 90, 196 A. 369; Zlevor v. Tice, 64 N.D. 626, 255 N.W. 470, 473; In re Giese's Estate, 64 N.D. 636, 255 N.W. 474; In re Eakins' Estate, 64 Mont. 84, 208 P. 956, 959; In re Gehring's Will, 179 Wis. 589, 192 N.W. 36, 38; 24 C.J. 71, § 492; 21 Am.Jur. 526, § 264.

Where, as here, the situation is more that of a change in securities for the protection of the estate, the reason for such power in an executor is even stronger. 21 Am.Jur. 528, § 270.

This estate, because of the character of most of the assets, requires prolonged administration. This stock dealing was both to protect the estate by diversifying the securities therein and to earn money to pay debts, carry on administration and aid distribution. It was clearly in direct line with administration. Moreover, it was of relatively small scope—the traded securities being only about one-half of the total securities in the estate and the total securities being less than one-third of the total assets of the estate. The situation comes well within the reasoning of Refling v. Burnet, supra, where expenses of an executor were held not to be business expenses although part of the activities of the executor consisted of "the investment of the proceeds of liquidation" of certain assets, 47 F.2d at page 859.

We must conclude that there was here no "carrying on of business" apart from the ordinary administration of the estate. This conclusion on the fact situation makes unnecessary any examination of the legal question which would arise were the execu-

property (which was owned by a corporation in liquidation at time of death, in which decedent held a substantial amount of securities and which had to be taken over by the stockholders (after death of decedent) and protected from trespassers—"squatters").

tor carrying on a business in the true sense of the Revenue Act.

■ Both the Board and the Commissioner emphasize that the activities of the executor were essentially the same as the testator. From this situation, the conclusion is drawn that the executor was "carrying on a business" in a taxing sense. This does not follow. If there is a tax difference between the activities of an orderly administration and the carrying on of business by an executor, such is not measured by the prior activities of the testator. The gauge is whether certain activities of the executor are not such as properly fall within the duties of the executor in the collection and protection of the assets, the discharge of obligations, and the distribution of the residue.

### 3. Testamentary Trust.

■ There were provisions in the will establishing certain trusts. Also, there were provisions in a codicil which would have justified a prolongation of administration for the purpose of providing the funds for these trusts. However, there is no evidence that this administration was prolonged for such purpose. On the contrary, there is the direct testimony of the executor that "My activities have been trying not to lose any potentially valuable property; primarily trying to realize on anything which could be made to produce money to help wind up the estate. * * * My object all along in the operation of this estate was to get it settled and out of the way. * * * Even if the estate had had no income, we would have had just as much service rendered to the estate by various people and just as much work, but we could not have paid anything. The income just helped to pay the freight. We started absolutely short of money, and we had to conserve the assets to try and make some money come in. What we have collected in the way of income is almost entirely the natural proceeds which I acquired as executor. The stocks, and the land contracts, the royalties and the dividends were all on transactions of my father before his death. * * * No attempt was made to sell this real estate as a whole, but if someone came along and wanted to buy a piece of land, except this mineral property, we were interested in trying to get that sold. It would not have been possible to distribute that much of the estate because most of this stuff is quite unmarketable. The property was not being withheld from administration to preserve it for the beneficiaries. In the case of mineral property like that, you cannot force it on the mining companies until they are ready to take it. It is pretty much what they offer. * * * We endeavored to move some of the property, like property on lake fronts up in the woods, did move some of that, had a great many complications to iron out, and when we had a chance to sell something we did. * * * I was trying to realize money to carry on the estate to try and wind it up and defray these big bequests and expenses. The claims have not yet been paid. There are still some outstanding and still some unpaid bequests."

The above-quoted as well as other evidence paints a clear picture of an administration being conducted in a regular manner for the benefit of the "estate as a whole." New York Trust Co. v. Eisner, supra, 256 U.S. at page 350, 41 S.Ct. at page 507, 65 L.Ed. 963, 16 A.L.R. 660. There is no evidence to the contrary. The sole circumstance in even seeming opposition is the prolongation of the administration. The force of that circumstance is entirely destroyed by necessities present for delay arising out of the character of the bulk of the assets. There is no substantial evidence to support an inference that such prolongation was in anywise caused by the requirements of the will or of the codicil as to trusts.

### 4. Double Deduction.

■ Some emphasis is placed, both by the Board and the Commissioner, on the fact that some or all of the deductions claimed here were claimed also in connection with returns for income taxation of the estate. There is no necessary inconsistency in claiming the deductions as to both estate taxes and also as to income taxes of the estate. The two taxes are different in theory and incidence. It is for the Congress to prescribe what, if any, deductions are to be allowed as to each. Also, it is for the Congress to declare that there shall be but one deduction and where that shall be permitted. Congress has prescribed separately the deductions allowable for estate tax purposes and for income tax purposes. Congress has not declared that these deductions shall, in any way, be affected by the circumstances—often of occurrence—that the same items might come within each of the separate deduction provisions. It is not for the courts to supply

this omission—if it be such—in the statute. See Brown v. Commissioner, 10 Cir., 74 F.2d 281, 286.

### 5. Rehearing Before the Board.

A. situation is presented by this record which requires determination in order to prevent injustice either to petitioner or to respondent. While the character of the expenditures claimed as deductions is such as would or might be allowable as administration expenses under the law of Minnesota[3], yet the amounts of those expenditures, which are quite substantial, are not shown, in this record, either to have been allowed by the Probate Court or to be reasonable. There is no testimony of either kind. It was necessary for petitioner to carry the burden of establishing the amounts claimed as well as the allowable character of the deductions as being administration expenses. This he has failed to do as to the amounts. On the other hand, it is clear from the record and the issues acted upon by the Board and presented here that this matter of amounts (if the expenditures were allowable as being administration expenses) was not a matter of contest between the parties. From these considerations arises the situation that, if we reverse the Board without more, petitioner is allowed deductions in amounts not established; while if we affirm the Board petitioner may lose upon an issue which he might have met successfully had he understood that it was really in dispute. A ready way exists to protect both parties and relieve them from these situations so that justice may be done. That is by vacating the determination of the Board that, for the reasons stated in its opinion, the claimed deductions were properly disallowed, and remanding the case with directions to afford to the petitioner an opportunity to prove that the deductions claimed were such as are allowable as "administration expenses" under the laws of Minnesota.[4] If, as the petitioner asserts, there is in fact no controversy between the parties as to the necessity and reasonableness of the administration expenses claimed as deductions, the case can no doubt be disposed of by the Board upon a stipulation of the parties. If the necessity and reasonableness of such expenses, or any portion thereof, is controverted, the petitioner, if so advised, may present evidence before the Board tending to establish that the several items claimed as deductions are allowable as "administration expenses" under the laws of Minnesota, and the respondent may also introduce evidence upon that issue. Pertinent evidence up to the time of such hearing shall be received and considered by the Board. After affording the parties an opportunity to produce such evidence as they care to produce upon that question, the Board will redetermine the deficiency in accordance with the facts disclosed by the present record as the same may be supplemented by the additional evidence adduced, if any.

The determination of the Board is vacated and the case remanded with directions to afford the petitioner an opportunity to prove that the administration expenses claimed as deductions were necessary and reasonable and therefore allowable as such under the laws of Minnesota, and for further proceedings consistent with this opinion.

---

[3] Section 8788, Mason's Minnesota Statutes for 1927, provides: "Every executor, administrator and guardian shall be allowed all necessary expenses in the care, management, and settlement of the estate, including proper and reasonable fees paid to attorneys, and for his own services such fees as are provided by law or fixed by the court * * *."

Section 118, Probate Code (chapter 72, Laws of Minnesota 1935) provides: "Every representative shall be allowed his necessary expenses incurred in the execution of his trust, and shall have such compensation for his services and those of his attorneys as the court shall deem just and reasonable * * *."

[4] Helvering v. Taylor, 293 U.S. 507, 514–516, 55 S.Ct. 287, 79 L.Ed. 623; Helvering v. Rankin, 295 U.S. 123, 131, 132, 55 S.Ct. 732, 79 L.Ed. 1343; Helvering v. Gowran, 302 U.S. 238, 247, 58 S.Ct. 154, 82 L.Ed. 224; Eau Claire Book & Stationery Co. v. Commissioner, 7 Cir., 65 F.2d 125, 126; Taylor v. Commissioner, 2 Cir., 70 F.2d 619, 621; Johnson v. Commissioner, 8 Cir., 88 F.2d 952, 956; Clements v. Commissioner, 8 Cir., 88 F.2d 791, 793; National Lumber & Tie Co. v. Commissioner, 8 Cir., 90 F.2d 216, 219.