# In re PROUDFIT'S ESTATE.
# STATE TAX COMMISSION v. PROUDFIT.

No. 7405. Decided June 26, 1950. (219 P. 2d, 1076).

See 61 C. J., Taxation, Sec. 2592. Inheritance tax as affected by expenses of administration, 92 A. L. R. 531. See, also, 28 Am. Jur. 122.

*Clinton D. Vernon,* Attorney General, *G. Hal Taylor,* Salt Lake City, *Don J. Hanson,* Salt Lake City, for appellant.

*Thatcher & Young,* Ogden, for respondent.

PRATT, Chief Justice.

This case comes to us as an appeal from an order of the district court fixing the amount of tax due under the Utah Inheritance Tax Law, U. C. A. 1943, 80—12—1 et seq., on the estate of Robert L. Proudfit, deceased.

Robert L. Proudfit, a resident of Weber County, Utah, died testate on May 14, 1948. By his will Jeanette R. Proudfit, his widow, was named executrix. The will was duly admitted to probate and the widow qualified and was appointed executrix.

The estate left by Proudfit consisted chiefly of realty

upon which were eight small houses and a duplex, comprising in all, ten rental units, together with such items as stoves and refrigerators in those rental units; and shares of stock of the Proudfit Sporting Goods Company. For inheritance tax purposes the estate was appraised at $220,-711.58.

In arriving at the inheritance tax obligation counsel for the executrix and for the tax commission differed sharply as to certain deductions sought to be taken by the executrix and disallowed by the State Tax Commission. These deductions were as follows:

1. Garden labor, maintaining and preserving real estate ................................................................ 247.75

2. Labor and management services on rented real estate ................................................................ 280.00

3. Repairs to preserve heating system in rented real estate ............................................................ 33.35

4. Heating costs in discharging decedent's obligations as landlord of rented real estate ............ 1056.17

5. General repairs necessary to maintain and preserve real estate and discharge decedent's obligations ................................................................ 882.52

6. Electric power and repairs on stoves and refrigerators on rented property, in compliance with obligations assumed by decedent as landlord ................................................................ 59.90

7. Water charges incident to maintaining and preserving real estate and serving tenants of real property ................................................................ 133.15

8. Insurance premiums on real estate improvements and furnishings ................................................ 188.92

It appeared that all these expenses were incurred after the death of Proudfit. The rental units were occupied at

the time of Proudfit's death, and continued to be occupied during all the period of administration of his estate, which consumed slightly over one year. During this time the rental was determined by and controlled by the OPA which was in effect at the time, and the services rendered in conjunction with the rental units was governed by the OPA.

Robert L. Proudfit, Jr., was manager of the rental units prior to his father's death, and he continued to manage the units thereafter at the request of his mother, the execurix.

The particular section of the statutes under which the deductions are claimed is not in dispute. The question arises in the interpretation to be placed thereon. The section is Sec. 80—12—8, U.C.A.1943, as amended by L.Utah 1943, Chap. 88, p. 131, Sec. 1, which reads as follows:

"The term 'debts' as used in the next preceding section shall include in addition to debts owing by the decedent in this state at the time of his death, all general and special taxes due in this state prior to his death, a reasonable sum for funeral expenses, including tombstone expenses not to exceed $200 when the same has been erected in this state prior to the settlement of the estate, *the costs and expenses of administration,* including attorney's fees and the statutory commission of executors in this state, and no other sum; but such debts shall not be deducted unless the same are approved and allowed as established claims against the estate within one year from the death of the decedent, unless otherwise ordered by the judge of the court having jurisdiction, or unless allowed by the state tax commission in case of foreign estate where the property taxable within this state consists of personal property only." (Italics added.)

The phrase "the costs and expenses of administration" is the phrase in dispute.

The parties have stipulated that, as a matter of administrative practice, over a period of at least the past four years, the tax commission has disallowed such deductions.

Robert L. Proudfit, Jr., testified on examination by the attorney for the Tax Commission, that the rental price was fixed sufficiently high to take care of all ordinary re-

pairs, remodeling and upkeep of the rental units. The rental units were operated much the same as an apartment building, with a central heating unit supplying heat to all units where it was regulated by means of individual thermostats.

The narrow question then which is presented for our determination is whether or not these items are properly includible as deductions from the gross estate for the purpose of determining the inheritance tax basis. The lower court ruled that they were properly deductible items.

The Tax Commission takes the position that these deductions were not incurred in the preservation of the estate, and not therefore deductible as a cost or expense of administration within the meaning of Sec. 80—12—8, heretofore quoted.

The respondent on the other hand, contends that we should look to the probate code to find out what the duties of administration are, and then when we do so, we will find the answer to what is meant by costs and expenses of administration. The particular sections of the probate code called to our attention are:

Sec. 102—11—3:

"The executor or administrator is entitled to, and must take possession of, all the real and personal estate of the decedent, and shall receive the rents and profits of the real estate until the estate is settled or delivered over by order of the court to the heirs or devisees; and must keep in good tenantable repair all houses, buildings and fixtures thereon which are under his control, and collect all debts due to the decedent and to the estate. The heirs or devisees may alone, or jointly with the executor or administrator, maintain an action for the possession of the real estate or for the purpose of quieting title to the same, against any one except the executor or administrator; but this section shall not be so construed as to require them so to do."

Sec. 102—11—24:

"He shall be allowed all necessary expenses in the care, management and settlement of the estate, including reasonable fees paid to attorneys for conducting the necessary proceedings or suits in court, and for his services the fees provided in this chapter; but when the decedent, by his will,

makes some other provision for the compensation of his executor, that shall be full compenstation for his services, unless, by a written instrument filed in the court, he renounces all claim for compensation provided for by the will."

Respondent argues that since the legislature did not see fit to further define "costs and expenses of administration" in Sec. 80—12—8, as amended in 1943, the intent is shown that the definitions heretofore attached in the probate code are to govern.

The amendment to Sec. 80—12—8, as made in 1943, was unquestionably an amendment broadening and liberalizing the deductions under that section. Prior to 1943, the deduction was limited to "court costs" only. Does that liberalization however require an expansion of the statute to embrace anything which might conceivably be an allowable expenditure, so far as an accounting upon final settlement of the estate would be concerned? We think that it does not.

The rule is stated in 61 C.J. 1704, Sec. 2592, as follows:

"Generally speaking, the expenses of administering a decedent's estate are to be deducted from the gross value of the estate in arriving at its clear or net value for inheritance tax purposes; but the rule does not extend to excessive expenses nor does it necessarily apply to every expenditure by an executor or administrator, even though the expenditure in question is a proper and legitimate one, allowable as a disbursement on the final settlement of the estate."

See also *Adams v. C. I. R.*, 8 Cir., 1940, 110 F.2d 578, where the rule is stated that outlays authorized by administering courts or required by statute are not necessarily deductible from the gross estate for estate tax purposes.

It takes little argument to see that expenses necessary to maintain the decedent's estate to keep it from deteriorating does not include operating expenses to keep the rental property of that estate in such condition, in addition to preservation, as is necessary to produce rental income for the benefit of the heirs or devisees. Con-

ceivably, if such operating expenses were sufficiently high, and the administration prolonged, the operating expenses would offset the value of the property, and a deduction claimed which would eliminate any estate tax thereon. We do not believe that the legislature intended such a result. Nor do we believe that every deduction which may be properly allowable to an administrator or executor in having his final account approved and the estate distributed and himself relieved of liability, is such an item as may be deducted as an expense of administration for determining the estate's "inheritance" tax basis. In this respect, we agree with the quotation from Corpus Juris above, and with the Adams case, supra.

Many items of expenditure receive approval of the probate court under petition for final account and distribution, which do not preserve the estate, and which are not necessary to its preparation for distribution, but which receive approval because they constitute a benefit to the heirs. The items which are actually items of proper administrative expense to preserve the estate intact and prepare it for distribution to the heirs and devisees are those which are deductible for the purpose of determining the Utah "inheritance" tax basis. In this respect, we adopt the language of U.S. Treasury Regulation 105, Sec. 81.33:

"The expenses contemplated in the law are such only as attend the settlement of an estate by the legal representative preliminary to the transfer of the property to individual beneficiaries or to a trustee * * * Expenditures not essential to the proper settlement of the estate, but incurred for the benefit of the heirs, legatees, or devisees may not be taken as deductions."

And Treasury Regulation 105, Sec. 81.35:

"Expenses necessarily incurred in preserving and distributing the estate are deductible, including the cost of storing or maintaining property of the estate, if it is impossible to effect immediate distribution to the beneficiaries. Expenses for preserving and caring for the property may not include outlays for additions or improvements. * * *"

Tested by these standards rather than by a determination of whether the items would be approved as a disbursement on final settlement of the estate, it becomes apparent that in the main the items rejected by the Tax Commission are expenditures not designed to preserve the estate, but rather to produce revenue for the benefit of the devisee. This estate was solvent, and had personalty far in excess of the estate obligations, which would have had to be exhausted under the law before the rents could have been used to pay off estate obligations, unless, of course, the devisee saw fit to volunteer those rents or other funds to preserve the personalty intact. There was no necessity then for operating the apartments to preserve the estate from this standpoint.

It is contended by respondent, that in view of the fact that rent control laws were in effect at the time, that the services were rendered pursuant to law and could not be terminated or lessened. We would concede that under the law the obligation remained, to allow the tenants to remain, and to maintain the required services. These same obligations would have attended a transfer by sale of the property, to render the new owner liable to continue operation.

The fact that the administrator was required by law to continue the services in no way alters the situation for tax purposes. No doubt the existence of rent control laws would have justified the approval by the probate court of the administrator or executor's account embracing such items. As we have indicated, however, this is not controlling for tax purposes, and the fact that approval of the probate court of such items is broader than an approval only of administrative expenses does not broaden the meaning of "administrative expenses" for tax purposes.

In the case *In re Bamberger's Estate,* 111 Utah 301, 177 P.2d 909, 911, this court traced the history of Sec. 80—12—8, to its present amended wording, and had occasion to pass upon what was meant by the phrase "costs and expenses of

administration." Said the court, speaking through Mr. Justice WOLFE:

"The 'costs and expenses' of the 'collection of the assets, the payment of debts and legacies, and distribution to the next of kin' and of doing 'all which may be done rightfully in the preservation of' the estate do not include the sums paid as debts or as legacies or sums paid to distributees. The phrase 'costs and expenses of administration' refers to the incidental expenses of paying the debts—not the amount of the debts themselves, to the incidental expenses of putting into the hands of the heirs and legatees their portion of the estate—not the amount of the sums thus delivered."

In that case it was held that the amount paid in discharge of the estate's Federal Estate Tax obligations was not deductible under Sec. 80—12—8, as amended, for the purpose of determining the net estate for Utah "inheritance" tax purposes.

Here, clearly, was an obligation which would be approved in the process of administration by the probate court, and yet was not deductible under Sec. 80—12—8, as a cost or expense of administration.

We conclude that the trial court erred in determining that the controverted items were properly deducted from the gross estate in determining the tax basis of the net estate. Certain of the items, in particular the fire insurance and replacement of broken windows, would ■ be proper expense deductions, if incurred for the benefit and preservation of the estate. However, in the present instance the situation was one in which the entire estate passed to the executrix personally under the will and the operation of the property at all times was directed solely for her benefit. In short, the expenditures were aimed at continuation to her of the income of the property, as a business, and not preservation of the estate as such.

It is contended that even though these items are not deductible as costs and expenses of administration, that they are nonetheless deductible as "debts owing by the decedent at the time of his death."

We conclude, however, that this is not so. If the lease ar-

rangement were a long term lease, with certain obligations under it, could it be contended that ten years after the death of the owner, the contractual obligations continued to be those of the decedent A mere recital of this, is sufficient to show its fallacy. That rent control regulations required the continuance of rental and services in no way changes this.

Judgment of the lower court is reversed and the cause remanded for exclusion of the disputed deductions in determining the net estate for Utah Inheritance Tax purposes.

Costs to appellant.

WADE, WOLFE, LATIMER and McDONOUGH, JJ., concur.