**ESTATE of Marcellus L. JOSLYN, Deceased.**

**Robert D. MacDONALD, Executor, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 75–3323.

United States Court of Appeals, Ninth Circuit.

Dec. 27, 1977.

Malcolm George Smith (argued), Los Angeles, Cal., for petitioner.

Gilbert E. Andrews (argued), of Dept. of Justice, Washington, D. C., for respondent.

Before BROWNING and TRASK, Circuit Judges, and FREY,* District Judge.

TRASK, Circuit Judge:

The executor of the estate of Marcellus L. Joslyn, deceased, appeals from a decision of the United States Tax Court rendered on August 11, 1975, and reported in 63 T.C. 478 (1975). The executor at all times has maintained his office in Santa Monica, California. Our jurisdiction is based upon section 7482 of the Internal Revenue Code of 1954. This is the second occasion upon which an estate tax problem concerning this estate has been before this court. The previous decision may be found reported at 500 F.2d 382 (9th Cir. 1974).

The issue now before us is whether expenses incurred in the sale of a particular asset of the estate to pay expenses of administration is a cost which is deductible under section 2053 of the Internal Revenue Code of 1954.[1]

No dispute exists as to the fact that the estate had incurred extraordinary expense during its administration and that assets were required to be sold to pay those expenses. To raise the amount of cash to meet those requirements and to pay taxes it

---

* Honorable William C. Frey, United States District Judge for the District of Arizona, sitting by designation.

1. The Internal Revenue Code of 1954, insofar as it relates directly to the problem of this case provides:

    "Section 2001  Rate of tax
      A tax computed in accordance with the following table is hereby imposed on the transfer of the taxable estate, determined as provided in Section 2051, of every decedent  .  .  ..
    "Section 2051  Definition of taxable estate
      For purposes of the tax imposed by Section 2001, the value of the taxable estate shall be determined by deducting from the

value of the taxable estate the exemption and deductions provided for in this part.
    "Section 2053 Exemptions, indebtedness and taxes
      (a) General rule.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

      .     .     .     .     .

      (2) For administration expenses,

      .     .     .     .     .

    as are allowable by the laws of the jurisdiction,  .   .   .  under which the estate is being administered."

was decided to sell a portion of the capital stock of the Joslyn Company held by the estate. There were 66,099 shares owned by Mr. Joslyn at the time of his death, which were traded over the counter. They were valued at $3,040,544 in the federal estate tax return. Upon audit, the value was increased to $3,103,697.43. This value gave recognition to the fact that in order to realize that sum, the shares could not be sold in one block (the "blockage" factor).[2] They were therefore split 4 for 1, and 250,-000 shares of the estate registered with the Securities and Exchange Commission for public sale by means of a secondary offering.

The sale of the 250,000 registered shares was handled by Hornblower & Weeks-Hemphill, Noyes (Hornblower), a large underwriter with offices throughout the United States. Hornblower assembled an underwriting group and entered into an agreement to handle sales. It then executed an underwriting agreement on March 30, 1965, providing for a closing date on April 6, 1965. Within a short period after March 30, 1965, all of the 250,000 shares had been sold to the public at retail in 2,391 separate sales.

As a result of the timing involved, the Commissioner's valuation, *supra* note 2, was able to show actual figures for the cost of sales rather than estimated figures. A total of $70,203.69, representing expense items one through seven (*see* note 2), was paid by estate check. Underwriters' fees of $288,750 were taken directly by the underwriters from proceeds of the offering. The payment of the entire expense including the underwriters' fees in the sum of $366,500.07 was allowed by the probate court of the State of California as an expense of admin-

istration of the estate. Accordingly, the appellant claimed a deduction on the estate tax return for this amount. It was disallowed by the Commissioner. The Commissioner argues in his brief here that the underwriters' fees constituted the "underwriters' profit" and is not a necessary portion of the cost of the sale of the Joslyn stock. We disagree.

We find it irrelevant in this context whether the underwriters realized a profit of $288,750 or a profit of twice that amount. For their services to the estate they charged that amount, it was paid, and the probate court of the State of California approved it. Had this asset been valued in the estate at a different figure, because the blockage had been ʹestimated differently, there would not have been the appearance of duplication. Yet, the validity of the deduction would have been the same.

The deductibility of underwriting expense in the sale of securities to meet debts and obligations of the estate has been sustained directly or by analogy before. *Estate of Park v. Commissioner*, 475 F.2d 673 (6th Cir. 1973); *Estate of Henry E. Huntington*, 36 B.T.A. 698, 726 (1937).

In *Huntington, supra,* the executors of the estate issued promissory notes to meet obligations of the estate and sold them to underwriters at 96 percent of their face value. They were later redeemed at face value. The purpose of the notes was to obtain cash to prevent sacrificing certain assets of the estate by forced sale. The legal question was whether a deduction could be taken for the discount on the sale to the underwriters as well as for the other expenses of the sale. The court upheld the claimed deduction saying:

---

**2.** The Commissioner gave recognition to this factor in reporting his computation which was as follows:

Item 32, *Joslyn Mfg. Co. Discount* was allowed up to the distribution expenses incurred as follows:

| | |
|---|---|
| Fair market value at date of death determined by taking the mean between the high and low. | $3,470,197.50 |

| | | |
|---|---:|---:|
| Less: Travel expense | $ 489.52 | |
| Bond premium for underwriter | 13,679.09 | |
| Attorneys for underwriter | 6,860.35 | |
| Reimbursement to Joslyn Mfg. | 46,366.66 | |
| Additional cost for Joslyn Mfg. | 1,081.30 | |
| Cost of Kindel & Anderson | 1,327.70 | |
| Additional costs of Kindel & Anderson | 399.07 | |
| Fees for Registration | 7,546.38 | |
| Underwriters fees | 288,750.00 | 366,500.07 |
| | | $3,103,697.43 |

"In our opinion the discount and redemption premiums at specified rates antecedently authorized by the order of the Superior Court on November 14, 1928, and actually paid by the estate in the amounts of $364,386 and $94,391.27, respectively, and the note issuance and redemption expenses also antecedently authorized by the same order and paid in the amounts of $49,368.68 and $35,262.93, respectively, constituted proper 'administration expenses * * * allowed by the laws of the jurisdiction * * * under which the estate is being administered', and, accordingly, are properly deductible from the decedent's gross estate. While there has not been cited by either party, nor have we found, any estate tax case involving directly similar expenditures, the principle of law is the same as that involved in numerous prior decisions in estate tax cases." *Estate of Henry E. Huntington*, 36 B.T.A. at 726. (Citations Omitted.)

In *Estate of Park, supra,* the court held that the expenses incurred by the administrator in selling estate properties, principally brokerage fees, were deductible under section 2053 of the Internal Revenue Code of 1954.

Appellee argues that somehow this underwriter's charge is an "underwriter's spread" and therefore may not be deducted. However it may be termed, it is in substance the charge which Hornblower made to sell the 250,000 shares and, as we understand it, no different than the charge which a real estate broker might make for selling a house.

The decision of the Tax Court is reversed.