The HIBERNIA BANK, Administrator with the will Annexed of the Estate of Celia Tobin Clark, Deceased, Plaintiff-Appellant,

v.

The UNITED STATES of America, Defendant-Appellee.

No. 76–1737.

United States Court of Appeals, Ninth Circuit.

Aug. 31, 1978.

Rand L. Peebles (argued), of Tobin & Tobin, San Francisco, Cal., for plaintiff-appellant.

Jonathon S. Cohen (argued), Dept. of Justice, Washington, D. C., for defendant-appellee.

Before SMITH,* DUNIWAY and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

The Hibernia Bank (Hibernia) appeals from a judgment of the district court denying its claim for a refund of federal estate

* Honorable J. Joseph Smith, United States Circuit Judge for the Second Circuit, sitting by designation.

taxes. This appeal squarely presents an important issue of estate tax law which has engendered a crisp conflict among the circuits. We affirm.

I

In May 1965, Celia Tobin Clark died testate leaving an estate worth several million dollars. Mrs. Clark's will provided for several specific bequests of personal property. The will also directed that the residue, which included the bulk of the estate, be divided among four testamentary trusts. The income of each trust was to be paid to one of Mrs. Clark's children with the remainder to be divided equally among Mrs. Clark's grandchildren. The residue of Mrs. Clark's estate included two principal components: a mansion situated on 240 acres in Hillsborough, California, and approximately 10,000 common shares of Hibernia Bank stock.

Mrs. Clark's will named Hibernia as trustee for the four testamentary trusts. The will also nominated two individuals to act as co-executors. These individuals declined to serve, however, and ultimately Hibernia was appointed administrator with the will annexed of the Clark estate.

On June 2, 1965, Mrs. Clark's will was admitted to probate. By December 1967, all of the specific bequests and virtually all claims against the estate had been paid. Apparently, at this time, Hibernia, acting as the administrator, could have sought permission to distribute the remaining assets, including the mansion and the Hibernia stock, to the testamentary trusts and to close the estate. Rather than do so, however, Hibernia elected first to liquidate the Hillsborough mansion.

Hibernia encountered substantial difficulty in disposing of the mansion, and it was not finally sold until the spring of 1972. During this period, the administrator was required to spend some $60,000 per year in order to maintain the residence. Thus, Hibernia believed that it was necessary either to sell the estate's share of Hibernia stock or, alternatively, to borrow the funds required to maintain the mansion. Hibernia elected to borrow.

In each of the years from 1966 through 1969, Hibernia executed a substantial loan from a commercial bank. The net proceeds from these loans equaled $775,000. Hibernia itself acted as lender for two of the four loans, the proceeds of which totaled $625,-000. The interest payments for the four loans totaled $196,210.[1]

In June 1971, Hibernia filed with the Commissioner a claim for a refund of part of the estate taxes paid on the Clark estate. As part of this claim, Hibernia asserted that it was entitled to deduct from the gross estate as expenses of administration the amount it had paid in interest on the four bank loans. The Commissioner disallowed the claimed deduction for the interest and denied the corresponding refund.

In March 1974, Hibernia brought suit in the district court asserting that it was entitled to deduct the loan interest and claiming a corresponding refund. Hibernia argued that the interest payments were deductible expenses of administration within the meaning of 26 U.S.C. § 2053(a)(2). The district judge disagreed and entered judgment in favor of the Commissioner. Hibernia renews its contentions on appeal; we also disagree.

1. Although the ethical quality of Hibernia's conduct as the estate's administrator does not bear on our disposition of this case, we do observe that Hibernia allowed itself to be placed in positions fraught with potential for abuse. First, Hibernia's decision to borrow funds and thereby subject the estate to substantial interest payments rather than sell the Hibernia stock carries at least the outward appearance of an attempt by Hibernia to avoid placing a large block of its own stock on the market at the expense of the Clark estate. Second, is Hibernia's decision to borrow from itself. This act placed Hibernia in a position where its interest sharply conflicted with that of the estate. As long as the loans remained unpaid, Hibernia received substantial interest payments at the expense and diminution of the estate. Of the $196,210 paid in total interest for the four loans, $133,241 was paid to Hibernia.

## II

Hibernia's argument is straightforward. Section 2053(a)(2) provides:

> For purposes of the [estate] tax . . . the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts . . for administration expenses . . . as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

In addition, Treas.Reg. § 20.2053–1(b)(2) provides in part:

> The decision of a local court as to the amount and allowability under local law of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends.

Therefore, the essence of Hibernia's argument is that the deductibility of administration expenses is exclusively [2] a question of state law. Since in this case the California probate court expressly approved the $196,210 interest payments as administration expenses, Hibernia contends that the Commissioner was required to permit a corresponding deduction.

Hibernia's contention is supported by *Estate of Park v. Commissioner of Internal Revenue*, 475 F.2d 673 (6th Cir. 1973), in which the Sixth Circuit expressly rejected the cases to the contrary and held "that the deductibility of an expense under 2053(a) (or its predecessor) is governed by state law alone." *Id.* at 676.

The district judge rejected Hibernia's argument and expressly declined to follow *Estate of Park*. The district judge ruled that in addition to showing that the claimed expense is allowable under state law, "the taxpayer must show that the claimed administrative expense was a reasonable, necessary administrative expense within the meaning of federal law."

There is no dispute in this case as to whether the interest rate was reasonable or as to the total amount of interest payments. Thus, the dispute centers around whether or not the interest payments were expenses of administration within the meaning of federal estate tax law. In order to resolve this issue, the district judge focused on Treas.Reg. § 20.2053–3(a), which provides in part:

> The amounts deductible from a decedent's gross estate as "administration expenses" . . . are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries or to a trustee . . . . Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions.

Viewing the issue in this light, the district judge found that the estate had been kept open *much* longer than necessary, thereby rendering the loans and interest payments made during the excess period also unnecessary. Specifically, the judge found as a matter of fact that "[w]ithin fifteen months of the testator's death [Hibernia], in its capacity as administrator of the estate, had sold all the assets of the estate except the mansion with its surrounding acreage and the Hibernia Bank stock." In addition, the district judge concluded that Hibernia had failed "factually [to] demonstrate an existing necessity to keep the Clark estate open for seven years." The district judge reasoned that since it was wholly unnecessary to keep the estate open during the period of the loans, the loans and interest payments were therefore also unnecessary to the administration of the estate. The implication is that the es-

---

**2.** Hibernia does concede that the Commissioner and federal courts would not be bound by a state probate court's determination of allowa-

bility in cases of "fraud, collusion or intent to [evade] estate taxes."

tate was left open in order to sell the mansion not because the sale was necessary for the administration of the estate, but rather because the heirs preferred to have cash distributed to the trusts rather than an undivided interest in the mansion. Thus, the expenses were not deductible.[3]

## III

■ We agree with the district judge that allowability under state law is not the sole criterion for determining the deductibility of a particular expenditure under section 2053(a)(2).

In *Pitner v. United States,* 388 F.2d 651 (5th Cir. 1967), the Fifth Circuit held that

3. During trial, the parties also disputed the issue of whether the loans were unnecessary because Hibernia could have generated necessary funds by selling the estate's holdings of Hibernia Bank stock. Hibernia argued that it correctly declined to sell the stock because of the lack of an adequate market and because the decedent's will indicated an intent that the estate retain the Hibernia shares. Although the district judge found as a matter of fact that there was an adequate market for Hibernia stock, he expressly declined to base his ruling on this point.

Apparently treating this issue as an alternative holding, Hibernia renews these arguments here. Because we agree with the district judge's conclusion that the loans were unnecessary because the administration of the estate was unduly prolonged, we have no occasion to reach these questions.

4. In *Pitner,* the court did observe, and we agree, that in most instances "the state law may be relied upon as a guide to what deductions may reasonably be permitted for federal estate tax purposes." 388 F.2d at 659. As the court explained, however, deference to state law as a guide cannot justify the deduction of expenses which simply are not "administration expenses" within the meaning of federal estate tax law.

5. In *Estate of Smith v. Commissioner,* 510 F.2d 479 (2d Cir. 1975), the decedent's executors sought to deduct commissions paid on the sale of certain estate assets. Even though all of the commission payments had been allowed by the state probate court, the tax court permitted the deduction of only about half of the commissions. The Tax Court concluded that the sale of assets beyond what was needed to pay the estate's debts, expenses, and taxes was not necessary for the administration of the estate. 57 T.C. 650 (1972).

[i]n the determination of deductibility under section 2053(a)(2), it is not enough that the deduction be allowable under state law. It is necessary as well that the deduction be for an "administration expense" within the meaning of that term as it is used in the statute, and that the amount sought to be deducted be reasonable under the circumstances. These are both questions of federal law and establish the outside limits for what may be considered allowable deductions under section 2053(a)(2).

*Id.* at 659.[4] *See also Estate of Smith v. Commissioner of Internal Revenue,* 510 F.2d 479 (2d Cir.), *cert. denied,* 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975).[5]

The Second Circuit affirmed, holding:

In the present case, appellants' claims for administration expenses were not contested in the Surrogate's Court and there is some question as to whether some of these expenses were in fact incurred for the benefit of the estate in accordance with the general purpose of § 2053 rather than for the benefit of individual beneficiaries. In such circumstances, the federal courts cannot be precluded from reexamining a lower state court's allowance of administration expenses to determine whether they were in fact necessary to carry out the administration of the estate or merely prudent or advisable in preserving the interests of the beneficiaries.

*Id.* at 482–83 (footnote and citations omitted).

In a footnote, the court explained that the federal court's task would be to assure that the claimed administration expenses are "the 'type intended to be deductible' (*United States v. Stapf,* 375 U.S. 118, 134, 84 S.Ct. 248, 11 L.Ed.2d 195 . . . ), ultimately a question of federal law." 510 F.2d at 482 n.4.

The court's acknowledgment that this is ultimately a question of federal law makes unclear the extent to which its holding is premised on the fact that this issue had not been contested in the probate court.

Some commentators have read *Estate of Smith* as merely permitting the federal tribunal to make a *de novo* inquiry into the correctness of the probate court's finding that the expenses were necessary to the administration. *See* 50 St. John's L.Rev. 357 (1975); Comment, Estate of Smith—*Deductibility of Administration Expenses under the Internal Revenue Code and under the Treasury Regulations: Resolving the Conflict,* 17 Wm. & Mary L.Rev. 363 (1975). This reading is buttressed by the court's citation to *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), in which the Supreme Court held that "where

We agree with the Fifth Circuit. We cannot read section 2053(a)(2) as permitting the deduction of expenditures which simply are not expenses of administration within the meaning afforded that term by federal estate tax law.[6] Our holding is firmly supported by prior decisions as well as sound principles of policy.

*United States v. Stapf,* 375 U.S. 118, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963), involved the will of a Texas decedent which directed that if the surviving spouse elected to take under the will rather than retain her one-half interest in the community, then the executors were to pay "all and not merely one-half" of the community debts and administration expenses. The court of appeals, concluding that Texas law permitted a testator to obligate his separate and community property for the debts and expenses of the entire community, held that the community's debts and administration expenses were deductible from the gross estate of the decedent. 309 F.2d 592 (5th Cir. 1962).

On certiorari, the Supreme Court instructed that "[t]he first question to consider is whether the claim is of the type intended to be deductible." 375 U.S. at 130, 84 S.Ct. at 256. Applying this analysis, the Court observed that the decedent's assumption of debts and expenses which ordinarily would have attached to the property of his wife was "in effect . . . a testamentary gift to his wife." *Id.* at 133, 84 S.Ct. at 258. The Court held that such a gift or "gratuitous assumption of debts," *id.* at 131, 84 S.Ct. 248, even though permissible under state law was not a claim against the estate within the meaning of the statute.[7] The Court applied the same analysis in denying the deductibility of administration expenses which, absent the will provision, would have been chargeable to the estate of the surviving spouse. *Id.* at 133–34, 84 S.Ct. 248.

We believe *Stapf* firmly undergirds our conclusion that even though an expenditure of estate funds is permitted by state law, it must in fact be an "administration expense[ ]" as contemplated by section 2053(a)(2) to be deductible as such.

In addition, our prior decisions in *In re Estate of Joslyn,* 500 F.2d 382 (9th Cir. 1974) (*Joslyn I*), and *Estate of Joslyn,* 566 F.2d 677 (9th Cir. 1977) (*Joslyn II*), signaled our intention to follow the *Pitner* analysis.

In *Joslyn I,* 500 F.2d 382, the estate sought an administration expense deduction for expenditures associated with the sale of stock. The Tax Court had disallowed the deduction on the grounds that the estate had already been permitted "an allowance for 'blockage' elements," *id.* at 383, in com-

---

the federal estate tax liability turns upon the character of a property interest . . . under state law, federal authorities are not bound by the determination made of such a property interest by a state trial court." *Id.* at 457, 87 S.Ct. at 1779.

By equating the necessity requirement of Treas.Reg. § 20.2053–3 with the standard for allowability under New York probate law, the court's *de novo* inquiry analysis enabled it to avoid considering the effect of the regulation. 510 F.2d at 483. The problem with this analysis is that the Tax Court clearly disallowed the deduction on the basis of the necessity requirement of the regulation rather than on the basis of a *de novo* review of the probate court's state law determination of allowability. *See* 57 T.C. at 660–62.

Similarly, in the case before us, it is clear that the district judge was not reviewing the state court's determination, but was imposing the "necessity" requirement of the regulation. The analysis of *Estate of Smith* is thus inapposite here.

6. In the case before us, there is no dispute as to the reasonableness of the interest rate or the total amount of interest payments. Therefore, we express no opinion regarding whether the Commissioner and federal courts are required to accept a state court's determination that the claimed administration expenses are "reasonable under the circumstances." *Pitner v. United States, supra,* 388 F.2d at 659.

7. *United States v. Stapf,* 375 U.S. 118, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963) was decided under I.R.C. § 812(b), 53 Stat. 123 (1939), the predecessor of section 2053(b). Section 812(b) required the deduction to be "allowed" by state law rather than "allowable." 375 U.S. at 120 n.2, 84 S.Ct. 248. This distinction is not material for purposes of this case and the analysis of the *Stapf* decision is fully applicable here.

This connection between deductibility and allowance under state law has its genesis in the first federal estate tax law. *See* Act of Apr. 8, 1916, Pub.L.No. 64–271, § 203(a)(1), 39 Stat. 778 (1916).

puting the value of the stock. We reversed, holding that the "blockage" allowance and administration expense deduction would not constitute an impermissible "double deduction." The importance of *Joslyn I* for our purposes here is that even though the entire expense had been allowed by the state probate court as an administration expense, *id.* at 383, we remanded the case to the Tax Court for it to determine "whether the particular deductions claimed are within the purview of section 2053 . . .." *Id.* at 387. In reaching our conclusion, we approvingly cited *Pitner* for the principle that Treas.Reg. § 20.2053–1(b)(2), which provides that a state court decision as to allowability under local law will ordinarily be accepted, "is not conclusive." *Id.* at 385 n.7.

In *Joslyn II*, 566 F.2d 677, the case returned to us following the Tax Court's disallowance of the underwriter's fees as an expense of administration. We reversed. Although we again observed that the probate court had allowed the entire expenditure as an administration expense, *id.* at 678, our decision was based on our independent analysis that the fees were in fact expenses of administration under section 2053(a)(2). *Id.* at 678–79.[8]

Policy considerations also militate in favor of our holding. The federal estate tax is not a tax on the decedent's property, but rather a tax on the *transfer* of that property. *See* 26 U.S.C. § 2001(a); 26 C.F.R. § 20.0–2 (1976); *see also United States Trust Co. v. Commissioner of Internal Revenue*, 307 U.S. 57, 60, 59 S.Ct. 692, 83 L.Ed. 1104 (1939); *see generally* C. Lowndes, R. Kramer & J. McCord, Federal Estate and Gift Taxes § 1.1 (3d ed. 1974). The mechanics of the estate tax give meaning to this distinction by permitting deductions from the decedent's gross estate for debts, administration expenses, and certain other liabilities. The resulting "taxable estate" on which the estate tax is calculated is the amount actually transferred to the heirs. Although fairness dictates that the taxable estate not include assets which will not be available for transfer to the heirs, fairness does not require the deduction of amounts which are not true liabilities of the estate. Thus, "[e]xpenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees" are not expenses of administration within the meaning of section 2053. 26 C.F.R. § 20.2053–3(a).[9]

---

**8.** In *Estate of Jenner v. Commissioner of Internal Revenue*, 577 F.2d 1100 (7th Cir., filed June 16, 1978), the Seventh Circuit followed our decision in *Joslyn II* by holding that underwriter's fees may be deductible expenses of administration. In *Jenner*, the Commissioner argued that even though the state probate court had allowed the expenses, "the case should be remanded to the Tax Court for a determination as to how much of the underwriting discount is deductible." At 1106.

In declining to remand, the court seemed to rely on *Ballance v. Commissioner of Internal Revenue*, 347 F.2d 419 (7th Cir. 1965), and *Estate of Park v. Commissioner of Internal Revenue, supra*, 475 F.2d 673, for the proposition that the state probate court's determination would be conclusive. The court concluded its decision, however, with the following analysis:

[W]e do find that there is ample evidence in the record to support the state probate court's implicit finding that under Illinois law the sale of the [stock] was reasonably necessary for the beneficial administration of the estate. We do not find it necessary therefore

to remand to the Tax Court for further consideration of this limited factual issue. At 1106.

This language seems to undercut the view that the probate court's ruling was conclusive. First, the court of appeals reviewed the record to verify that the probate court's finding of necessity was supported by the record. In addition, the implication of the quoted language is that if the issue of necessity had not been clear from the record, the case would have been remanded to the Tax Court, the probate court's finding notwithstanding.

**9.** Hibernia does not expressly challenge the validity of Treas.Reg. § 20.2053–3(a). If we were to accept its argument, however, we would find it most difficult to square it with this regulation. In this connection, the Supreme Court has recently reemphasized the deference to be afforded treasury regulations.

"[I]t is fundamental . . . that as 'contemporaneous constructions by those charged with administration of' the Code, [Treasury] Regulations 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes,' and 'should not be overruled except for weighty reasons.'"

■ The district judge's conclusion that the Clark estate was left open much too long is amply supported by the record. Fed.R.Civ.P. 52(a). Since it was unnecessary to leave the estate open during the period of the loans, it is clear that the loans were not necessary to the administration of the estate.[10] Accordingly, the district judge was correct in disallowing an administration expense deduction for the amount of the interest payments.[11]

AFFIRMED.

DUNIWAY, Circuit Judge (concurring):

I concur. I write only to point out that there are sound practical reasons, in addition to those stated by Judge Wallace in his opinion, which require that we construe § 2053(a)(2) of the Internal Revenue Code as permitting the deduction of those expenditures only which are expenses of administration within the meaning of federal estate tax law.

First, in California, and I suspect in most other states, probate proceedings are essentially ex parte in character. While the Probate Code requires an executor or administrator wishing to borrow money to obtain an order of court authorizing the borrowing, see California Probate Code § 830, and while an executor or administrator must account to the court for all receipts and expenditures, see California Probate Code

*Fulman v. United States*, 434 U.S. 528, 98 S.Ct. 841, 845, 55 L.Ed.2d 1 (1978), *quoting Bingler v. Johnson*, 394 U.S. 741, 749–50, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969).

We find no conflict between Treas.Reg. § 20.2053–3(a) and section 2053. As discussed in the text, we believe this regulation embodies a correct principle.

We also observe that this regulation has been in effect without significant modification since 1919. *See* T.D. 2910, 21 Treas.Dec.Int.Rev. 752, 778–79 (1919). During this period, of course, Congress has amended the estate tax provisions several times without a material change in the code provision on which this regulation is based. *See, e. g.,* Act of Sept. 8, 1916, Ch. 463, § 203(a)(1), 39 Stat. 778 (1916) (original estate tax statute); Act of Feb. 26, 1926, Ch. 27, § 303(a)(1), 44 Stat. 72 (1926); Revenue Act of 1932, Ch. 209, § 805(1)(B), 47 Stat. 280 (1932); Internal Revenue Code of 1954, Ch. 11, § 2053(a)(2), 68A Stat. 389 (1954).

10. Our approval of the district judge's analysis that unnecessarily prolonging administration for the convenience of the heirs renders interest expenses during the excess period non-deductible appears, at first blush, to conflict with *Adams v. Commissioner of Internal Revenue*, 110 F.2d 578 (8th Cir. 1940). In *Adams*, the Commissioner and Board of Tax Appeals disallowed administration expense deductions on the ground that the expenditures "were not truly 'administration expenses,' but were incurred in course of a prolonged administration in connection with carrying on a business . . . .." *Id.* at 580.

In vacating the Board's decision, the Eighth Circuit stated:

The prolongation of administration of an estate is a matter of concern purely of the court having the estate in charge. . . . The mere fact alone of prolongation of administration does not, under the law here

applicable, have any effect upon the propriety of the deduction here sought.
*Id.*

If this language is read to mean that prolongation of administration *alone* will not invalidate an administration expense, we agree. Clearly, there are estates which *require* substantial periods of time for proper administration. If, on the other hand, this language is read to mean that the duration of administration is flatly irrelevant to the issue of deductibility, then we would reject the dicta. In *Adams*, the court expressly observed that the lengthy administration was "require[d]" by the "character of the bulk of the [estate's] assets." *Id.* at 582, 583. Thus, the court had no occasion to consider the impact of unnecessary prolongation of administration on the question of deductibility of administration expenses.

11. The district judge did not specifically indicate at what point the estate should have been closed. This creates the possibility that some of the interest payments might be deductible if the corresponding loans were executed during the period the estate was properly open. We do not believe, however, that this question requires us to remand. First, the district judge disallowed all of the interest payments. Thus, we may properly infer that he found none of the loans necessary to the proper administration of the estate. Second, although he did not base his ruling on this finding, *see* note 3 *supra*, the district judge did find that Hibernia "was not prevented from disposing of its Hibernia Bank securities due to a lack of interest in the marketplace, and that consequently [Hibernia] need not have borrowed money in lieu of selling the Hibernia securities." We see no reason to believe that this finding does not pertain to all of the loans.

§§ 921 and 922, there is no requirement that personal notice be given to any party interested in the estate. Notice is given by posting a notice by the clerk at the courthouse (Probate Code § 1200) and is required to be mailed to an interested party only if that party has filed a request for a special notice (Probate Code §§ 1200 and 1203). Publication in a newspaper of general circulation is also required if the petition is for leave to borrow (§ 1201). The court can require additional notice (§ 1204) but generally does not do so. In this case only one person interested in the estate filed a request for notice and the administrator, because of that notice, regarded that person as "uncooperative." The petitions for orders of the court authorizing the administrator to borrow, and the accounts of the administrator, were not contested by anyone. There is no inducement to a California state court to restrict the allowance of claimed administrative expenses in order to prevent improper reductions of the federal estate tax. Indeed, many state judges would probably be pleased to assist the representative of the estate and the heirs in thus reducing the estate tax.

Second, as is pointed out in Judge Wallace's opinion, footnote 1, the Hibernia Bank was on every possible side of the probate proceedings in this case. It was the administrator with the will annexed of the decedent's estate; it was the trustee of the three testamentary trusts that were each to receive one quarter of the residue of the estate; it borrowed $625,000 from itself, and paid itself over $130,000 in interest. A large block of its stock was the most valuable single asset of the estate, and Hibernia's management had an interest in not having that stock sold. As administrator, Hibernia had a duty to hold down expenses. As the lender, it had a duty to its shareholders to obtain the highest interest rate that it could lawfully obtain. As the trustee, it had a duty to compel itself as administrator to close the administration of the estate as soon as practicable. As lender, its interest was to have the estate kept open and con-

tinue to borrow money and pay interest. As administrator, it owed beneficiaries a duty to minimize estate taxes. No matter which way it turned, it met itself. There was nobody actually before the probate court to question the validity or propriety of any of its expenditures, or to object to any phase of its administration of the estate. Certainly the interest of the United States in collecting its estate tax was not represented before the probate court, and it is doubtful that the United States would have been recognized had it attempted to appear before that court. California Probate Code § 1203 permits the United States to request notice and to appear in a probate proceeding "[w]hen compensation, pension, insurance or other allowance is made or awarded by the United States government, or a department or bureau thereof, to estates of decedents . . . ." There is no other California statute that I know of that authorizes the government of the United States or the Internal Revenue Service to appear in a probate court. Moreover, the United States would be likely to find itself in a hostile forum if it did appear.

I cannot believe that it was the intention of the Congress in adopting § 2053(a)(2) of the Internal Revenue Code to place the federal fisc at the mercy of an essentially ex parte probate proceeding in a California court in which it is possible for one institution to play so many and such inconsistent roles. I do not believe that Congress intended to give the game away in that fashion.