ESTATE OF Margaret D. LOVE, Deceased; Anne Love Hall; Stanard
T. Klinefelter, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–Appellee.

No. 90–1724.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 2, 1990.

Decided Jan. 18, 1991.

Kurt James Fischer, Piper & Marbury, Baltimore, Md., argued (Stanard T. Kline-felter, Piper & Marbury, Baltimore, Md., on brief), for petitioners-appellants.

Sally J. Schornstheimer, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Jonathan S. Cohen, Tax Div., U.S. Dept. of Justice, Washington, D.C., on brief), for respondent-appellee.

Before WIDENER and WILKINSON, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

HIRAM H. WARD, Senior District Judge:

This case comes before this Court on appeal from the United States Tax Court, which found that the estate of Margaret D. Love (the "Estate") owed a deficiency of $48,886 in estate taxes. The issues presented are, first, whether deductibility under 26 U.S.C. § 2053(a)(2) is controlled by state or federal law; and, second, whether the Tax Court properly determined that the Estate is not entitled to deduct as administrative expenses a $147,000 payment (the "payment") made pursuant to a "foal-sharing" agreement. Because of compelling policy reasons, we hold that federal law controls and, therefore, affirm the Tax Court.

**I**

Margaret D. Love died testate on March 22, 1983. She was, at the time of her death, involved in the business of breeding and racing thoroughbred horses. On January 6, 1983, Love entered into an agreement to have one of her mares, located in France, bred by a stallion owned by Coolmore Stud in Ireland. The agreement dictated that Coolmore Stud was not to receive a straight "stud fee"; rather, Coolmore Stud would own a one-half interest in any offspring—a "foal-sharing" agreement. This foal was to be sold as a yearling at a price determined jointly by Love and Coolmore Stud. The agreement, written in French, also provided that Love would pay Coolmore the sum of 115,000 Irish pounds in the event of "disaster," such as bankruptcy or death, so that the foal could be sold free of any encumbrances. The mare was not impregnated, or "covered," until 15 days after Love's death.

Love's will directed that her operations in France be liquidated. Therefore, in September 1983 the Estate paid Coolmore Stud 115,000 Irish pounds ($147,000) to extinguish the foal-sharing agreement. The pregnant mare was auctioned at Newmarket, England, in late November 1983 for 820,000 guineas ($1,220,406).[1]

The Estate deducted the $147,000 from its federal estate tax return as an administration expense under § 2053(a)(2) of the Internal Revenue Code.[2] The Estate contended that although the payment was not yet an obligation at the time of Love's death (the mare was not pregnant), it was necessary to the administration of the estate. The Commissioner disallowed the deduction.[3]

---

1. The mare was valued at $300,000 for estate tax purposes (JA 41); at oral argument we were advised by counsel that the Estate paid capital gains tax on the excess proceeds of the sale.

2. Unless otherwise noted, all references are to the Internal Revenue Code of 1954, in effect at the time of decedent's death in 1983.

3. Additionally, at the time of her death, Love had entered into two executory stud fee agreements. The total due under these agreements was $13,558.87. The Estate sought to deduct this amount because it constituted obligations existing on the date of death. The Commissioner disallowed these deductions as well as the $147,000 payment.

On March 28, 1984, the Orphan's Court for Baltimore County approved a First Administration Account for the Estate which noted that the Estate had paid the $147,000 obligation and the $13,558.87 due under the two stud fee contracts, and allowed deduction of all three as administrative expenses under Maryland law.

The Estate filed a petition in the Tax Court seeking a redetermination of the deficiency. The Tax Court also disallowed the payment, agreeing with the Commissioner that the $147,000 payment was an expenditure for an addition or improvement whereby the Estate purchased Coolmore Stud's remaining one-half interest in the unborn foal.[4] This appeal followed.

## II

The first issue before this Court is whether state or federal law controls the determination of what is an administrative expense under 26 U.S.C. § 2053(a)(2). This Court has never directly faced this issue, although a previous panel noted in dicta that the application of a federal standard might be doubtful.[5] We must now decide that question. Title 26 U.S.C. § 2053(a)(2) provides:

> For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts . . . for administration expenses . . . as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

Various circuit courts of appeals have dealt with this issue, and there is a split among these courts. The Sixth and Seventh Circuit Courts of Appeals have held that state law controls this issue [6] while the Second, Fifth, and Ninth Circuit Courts of Appeals have held that, though the position of state law on the issue is important, policy considerations require that federal regulations be applied to make this determination.[7] This Court now joins the Second, Fifth, and Ninth Circuit Courts of Appeals in holding that this is a question of federal law.

The reasoning of the Fifth Circuit Court of Appeals is persuasive. That Court stated:

> [I]t is not enough that the deduction be allowable under state law. It is necessary as well that the deduction be for an "administrative expense" within the meaning of that term as it is used in the statute, and that the amount sought to be deducted be reasonable under the circumstances. These are both questions of federal law and establish the outside limits for what may be considered allowable deductions under section 2053(a)(2).

*Pitner v. United States*, 388 F.2d 651, 659 (5th Cir.1967). This policy was further expounded in *Hibernia Bank v. United States*, 581 F.2d 741 (9th Cir.1978). Noting that the federal estate tax is a tax on the transfer of property rather than the property itself, that court pointed out that the estate tax "gives meaning to this distinction" by allowing deductions for administrative expenses which in turn creates an estate consisting only of amounts which actually pass to the heirs which are taxed accordingly. *Id.* at 746. This is only fair. *Id.* However, it would be unfair to allow the deduction of expenditures not necessary to the estate, and this principle is maintained most effectively by 26 C.F.R.

---

**4.** The Tax Court did allow the deduction of the two executory stud fee payments equalling $13,-558.87, holding that because Love was personally liable for both payments on the date of her death, they were deductible under section 2053(a)(3).

**5.** *Commercial Nat'l Bank of Charlotte v. United States*, 196 F.2d 182, 185 (4th Cir.1952).

**6.** *See Estate of Park v. Comm'r*, 475 F.2d 673 (6th Cir.1973) (Congress has committed to the states the issue of whether a particular expense is allowable as a proper or necessary charge against estate assets); and *Estate of Jenner v. Comm'r*, 577 F.2d 1100 (7th Cir.1978) (as a general rule the decree of a probate court approv-

ing expenditures as proper administrative expenses under state law will control).

**7.** *See Pitner v. United States*, 388 F.2d 651, 659 (5th Cir.1967), and *Hibernia Bank v. United States*, 581 F.2d 741 (9th Cir.1978) (*infra*); and *see Estate of Smith v. Comm'r*, 510 F.2d 479, 482–83 (2d Cir.) ("federal courts cannot be precluded from reexamining a lower state court's allowance of administration expenses to determine whether they were in fact necessary to carry out the administration of the estate or merely prudent or advisable in preserving the interests of the beneficiaries") (footnote omitted), *cert. denied sub nom. Lowe v. Commissioner*, 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975).

§ 20.2053–3(a), the *federal* regulation which fulfills the intention of the statute.

Section 20.2053–3(a) of 26 C.F.R. provides:

> The amounts deductible from a decedent's gross estate as "administration expenses" . . . are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. The expenses contemplated in the law are such only as attend the settlement of the estate and the transfer of the property to individual beneficiaries or to a trustee, whether the trustee is the executor or some other person. Expenses not essential to the administration of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. Administration expenses include (1) executor's commissions; (2) attorney's fees; and (3) miscellaneous expenses.

Given this regulation, it is clear that this is a question of federal law and federal taxation policy which would not be properly addressed under a state statute. This position is undergirded by the decision of the Supreme Court in *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). There the Court stated that "where federal estate tax liability turns upon . . . state law, federal [courts] are not bound by the determination made . . . by a state trial court." *Id.* at 457, 87 S.Ct. at 1778. *See also* Note, *The Estate Tax Deduction for Administration Expenses: Reformulating Complementary Roles for Federal and State Law Under I.R.C. § 2053(a)(2),* 67 Cornell L.Rev. 981, 986 (1982). Thus, any state court decision regarding this matter, whether based on federal or state law, would not bind a federal tribunal. Having established that federal law controls, we now turn to the application of that law to the instant case.

### III

■ Of the three categories of administration expenses listed in 26 C.F.R.

§ 20.2053–3(a) as deductible (executor's commissions, attorney's fees, and miscellaneous expenses), the payment in this case could only fall into the category of a miscellaneous expense, but it fails to qualify as such. Section 20.2053–3(d)(1) further defines the items which may be deducted as miscellaneous administration expenses:

> Miscellaneous administration expenses include such expenses as court costs, surrogates' fees, accountants' fees, appraisers' fees, clerk hire, etc. Expenses necessarily incurred in preserving and distributing the estate are deductible, including the cost of storing or maintaining property of the estate, if it is impossible to effect immediate distribution to the beneficiaries. Expenses for preserving and caring for the property may not include outlays for additions or improvements. . . .

Several courts have expanded this list somewhat. Attorneys' fees are deductible as administration expenses, *De Niro v. United States*, 561 F.2d 653, 658 (6th Cir. 1977), as are brokerage fees, *Estate of Joslyn*, 566 F.2d 677 (9th Cir.1977). Further, guardians' fees are deductible, *Estate of Ruxton v. Comm'r*, 20 T.C. 487 (1953), and executors' commissions and fees are deductible as well, *Hubbard v. Comm'r*, 41 B.T.A. 628 (1940).

Clearly, the payment the Estate wishes to deduct is not the sort of expense contemplated by the statute, the regulation, or the case law. Such an outlay is not in the nature of a fee required to pay persons who help in administrating the estate, nor is it a cost generally incurred in preserving or maintaining the property. Neither does it fit into the categories of the collection of assets, payment of debts, or distribution of property to the persons entitled to it. Rather, the acquisition of a one-half interest in the fetus constituted an addition to the estate, and, therefore, as the Tax Court correctly stated, "the payment is no more an 'expense' than would be a payment for a new horse or some other asset acquired by the probate estate." (JA 147.)

Further, as noted earlier, the purpose of a deduction under 26 U.S.C. § 2053(a) is to

ensure that only the net estate is taxed. In this case, the payment of $147,000 was merely substituted for an additional one-half interest in the unborn foal. Therefore, the gross estate was unchanged, unlike the case of an outlay for attorneys' fees or preservation of the property. In those instances, some amount of money is paid out by the estate rather than passed on to the beneficiaries making taxation of that money inappropriate. Deductions are allowed in that context. The purchase of the one-half interest in the foal, however, was an acquisition passed on to the beneficiaries, making taxation appropriate.[8] The regulation specifically excludes any reduction in the gross estate for such improvements. 26 C.F.R. § 20.2053–3(d)(1). Thus, no deduction is warranted.

There being no error, we affirm the opinion of the Tax Court.

AFFIRMED.

8. The purchase of this additional one-half interest allowed the Estate to auction the unencumbered mare at a substantial profit.