Mark D. SCHWAN, Paul M. Schwan, and Lawrence A. Burgdorf, as Co–Executors of the Estate of Marvin M. Schwan Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CIV 01–4171.

United States District Court,
D. South Dakota,
Southern Division.

March 17, 2003.

Mark F. Marshall, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, Gregory M. Weyandt, Rider, Bennett, Egan & Arundel, Minneapolis, MN, for Mark D. Schwan, Co-executor of the Estate of Marvin M. Schwan est Marvin M. Schwan, Paul M. Schwan, Co-executor of the Estate of Marvin M. Schwan, Lawrence A. Burgdorf, Co-executor of the Estate of Marvin M. Schwan, executor plaintiffs.

Michelle G. Tapken, U.S. Attorney's Office, Sioux Falls, SD, Daniel R. Conrad, Donald N. Dowie, U.S. Department of Justice, Special Litigation/Tax Division, Washington, DC, for United States of America, defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Pending before the Court are the parties' cross-motions for summary judgment. The motions has been extensively briefed by the parties and both parties have filed supplemental submissions. For the reasons stated below, the Plaintiffs' Motion for Summary Judgment will be denied, and the Defendant's Motion for Summary Judgment will be granted. Also pending before the Court is Defendant's Motion to Strike Portions of the Plaintiffs' statement of facts in support of the Plaintiffs' motion for summary judgment. The motion to strike will be denied as moot. The parties have also filed several motions regarding discovery disputes and requested that the Court reserve ruling on such motions until the summary judgment motions are decided. In light of the Court's granting of the Defendant's motion for summary judgment, the motions regarding discovery disputes will be denied as moot.

## BACKGROUND

Mark D. Schwan, Paul M. Schwan and Lawrence A. Burgdorf instituted this action on behalf of the estate of Marvin Schwan seeking to recover $85,795.00 that the estate paid in federal income tax. Marvin Schwan died on May 9, 1993. His will and codicil were admitted to probate in South Dakota on June 7, 1993. Under the terms of the will, each of Mr. Schwan's four children were to receive $1 million. The will also provided that $1.5 million was to be placed in a trust for the his grandchildren (Grandchildren's Trust). These legacies were not paid in full until September 21, 1998. Because of this delay in satisfying the legacies, the estate incurred substantial interest expense under South Dakota law, which interest expense is at the heart of this litigation.

At the time of Marvin Schwan's death. South Dakota Codified Laws §§ 29–6–22 and 29–6–23 provided that legacies under a will are due at the expiration of one year after the decedent's death and, if not satisfied by that time, the legacies would accrue interest at the statutory rate until satisfied. The interest rate in effect during the time that the legacies under Marvin Schwan's will went unpaid was 12%. The Plaintiffs contend that the interest paid on these legacies is a deductible expense for the estate for purposes of federal income tax. Consequently, the estate filed an amended income tax return claiming a

deduction of $379,037.00 for the tax year ending April 30, 1996. The estate sought a refund of the $87,795.00 that it had paid in income tax for that year. The IRS disallowed the deduction and this suit followed.

Marvin Schwan's estate plan consisted of three instruments: a will and codicil, a trust agreement, and a repurchase agreement. Article 2 of the will directed the executors to pay the legally enforceable debts of the estate out of probate assets and also directed that estate taxes be paid out of the principal of the trust. Paragraph 3.4 of Article 3 of the will stated that each of Marvin Schwan's children were to receive $1 million. The will went on to indicate that these legacies may be satisfied in cash or by distribution of property, other than Schwan's Sales Enterprises, Inc. stock (Schwan's stock), in kind, or partly by each. In his will, Mr. Schwan also gifted $1.5 million to his grandchildren in trust.

The trust agreement (Schwan trust) was executed by Marvin Schwan on November 20, 1992. In it he created a trust to which he transferred all of his shares of Schwan's stock. He initially conveyed 261,691 shares of stock, but a subsequent 100–to1 stock dividend increased the total number of shares to 25,915,076. Outside of the trust, Marvin Schwan did not own any Schwan stock. Paragraph 3.1 of Article 3 of the trust agreement provided that trust assets be used to pay the gross estate's liabilities, including federal estate taxes. Paragraph 3.2 of Article 3 further provided that if the probate estate lacked sufficient funds to satisfy the legacies under the will, trust assets should be used to satisfy those legacies. Paragraph 3.3 of Article 3 clearly established the priorities of Marvin Schwan in satisfying the various obligations of his estate. It read as follows:

All payments made pursuant to the provisions of paragraph 3.1 (estate liabilities including estate taxes), or 3.2 (legacies under the will) ... shall be made from the assets of the Trust Estate remaining after complying with the provisions of Article 4 (gift of Florida Fruit Juices and Quik Pleez Food Marts stock to Schwan's children), 5 (trust for Schwan's brother), and 6 (trust for Schwan's wife) of this trust agreement and from assets of the Trust otherwise disposed of under the provisions of paragraph 8.2 of Article 8 of this Trust Agreement (the residue).

Paragraph 8.1 of Article 8 directed that all of the Schwan stock, except any stock used to satisfy any legacy, gift or obligation under the settlor's will, be distributed to the trustees of the Marvin M. Schwan Charitable Foundation (Foundation).

The final document comprising the decedent's estate plan was the redemption and repurchase agreement. Paragraph 5 of Article 1 of this agreement read as follows:

Certain of the securities transferred by Schwan to the Trust ... shall, by specific bequest upon the death of Schwan, become the property of the Foundation, which securities include: 1) common or other voting capital stock of the company; 2) voting capital stock of any affiliate of the company and 3) voting capital stock that is the product of any reorganization of the company ...

The agreement went on to provide that Schwan's Incorporated would redeem the voting stock that had been conveyed to the Foundation. This would leave the Foundation with cash and the company with its voting shares.

Lawrence A. Burgdorf was very involved in the affairs of Marvin Schwan. Burgdorf was named as an executor of Mr. Schwan's estate under his will. He was also a trustee of the Schwan trust and a trustee of the Foundation. Burgdorf also apparently worked in some capacity for

the Schwan company. Actions taken by Burgdorf in his various capacities play a central role in the administration of Schwan's estate.

As stated above, Marvin Schwan died on May 9, 1993. Approximately seven months after his death, the Schwan trust conveyed all of the Schwan stock, which constituted the bulk of the trust assets, to the Foundation. Contrary to the directions found in Schwan's estate plan, this conveyance, which took place on December 8, 1993, occurred prior to the satisfaction of the legacies under Mr. Schwan's will and also prior to any payment of the liabilities of the estate. In fact, a couple of weeks later on December 21, 1993, the estate made only a partial distribution to the legatees under the will citing a lack of funds to pay the full amount due. Since the majority of the trust assets had already been transferred to the Foundation, the probate assets presumably needed to be retained in order to satisfy the obligations of the estate.

On May 17, 1995, the children of Marvin Schwan instituted an action in federal district court in Minnesota against the Foundation, the Schwan's company, Alfred Paul Schwan and Lawrence Burgdorf. The estate was not a party to this litigation. The children sued as minority shareholders of the Schwan's company and beneficiaries under the various trusts created for their benefit. Defendants Alfred Schwan and Burgdorf were named as officers of Schwan company and trustees of various trusts established by Marvin Schwan or by the plaintiffs for benefit of the plaintiffs and their descendants.

The complaint alleged that the Defendants Alfred Schwan and Burgdorf breached their fiduciary duties and committed officer misconduct. Burgdorf, acting as executor of the Schwan estate entered into an agreement amending the redemption agreement between the Schwan's company and the Foundation. As stated above, in addition to being an executor of Marvin Schwan's estate. Burgdorf was also a trustee of the Foundation. As originally drafted, the redemption agreement only obligated the company to redeem the voting stock held by the Foundation. The amendment required the company to redeem all of the Schwan stock held by the Foundation. At the time, the Foundation owned 5,076 shares of voting stock and 25,910,000 shares of non-voting stock. The amendment significantly increased the obligation of the company and resulted in the company entering into an agreement with the Foundation wherein the company agreed to pay the Foundation $89,450,800 in cash and delivered a promissory note to the Foundation for the remaining $780,000,000. The children alleged that the increased obligation constituted an excessive debt of the company thereby inhibiting the company's ability to deal with other creditors and secure loans. Furthermore, the children alleged that the amendment and its consequent debt limited the company's ability to pay dividends and decreased the value of the shares. The children also claimed that the purchased price for the stock reflected in the amended redemption agreement exceeded the fair value of the stock by over $250,000,000.

The lawsuit was settled on November 25, 1997. Under the terms of the settlement, the amendment to the redemption agreement would remain in place and the Schwan's company agreed to purchase the shares of Schwan stock held by the Plaintiffs. Approximately three months later on March 1, 1998, the Foundation entered into an agreement with the estate agreeing to supply the estate with the funds necessary to satisfy the legacies to the children and the Grandchildren's Trust and to pay the fees of the personal representatives of the estate. Just over six months later on

September 21, 1998, the estate paid the remainder of the legacies under the will.

With respect to the federal estate tax liability, on February 4, 1994, the Estate filed an application with the IRS requesting additional time to file the estate tax return and made an estimated tax payment of $5,100,000. This payment was made out of assets of the probate estate, presumably because the trust assets had already been significantly depleted by the gift of Schwan stock to the Foundation. On August 7, 1994, the Estate filed an estate tax return showing the Estate's total federal estate tax liability to be $5,033,-714,18. Sometime prior to September 19, 1995, the Estate received notification that the IRS was auditing the federal estate tax return, and given the correspondence between the parties, it quickly became clear that the government would contend that there was a deficiency regarding federal estate tax and that the amount of such deficiency could be significant. On August 5, 1997, the IRS issued a Notice of Deficiency with respect to the federal estate tax and claimed a deficiency of $415,480,079 or, in the alternative, of $181,921,766. The South Dakota Circuit Court appointed Lawrence A. Burgdorf Special Administrator of the Estate for purposes of prosecuting the estate tax litigation against the IRS. The Estate filed a petition in the United States Tax Court on October 31, 1997, for a redetermination of the deficiency. As far as the Court is aware, the estate tax liability of Marvin Schwan's estate is still at issue before the Tax Court.

## DISCUSSION

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, this Court views the evidence in a light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir.1992) (quoting Fed.R.Civ.P. 56(c)). "[T]he mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment." *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992) (citation omitted). "Instead, 'the dispute must be outcome determinative under prevailing law.'" *Id.* (quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir.1989)).

## I. Whether a Deduction is Available under I.R.C. Section 212

First, the Plaintiffs claim that the interest paid on the deferred legacies under South Dakota law is deductible as an ordinary and necessary administration expense under I.R.C. § 212. Section 212 of the Internal Revenue Code provides as follows:

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax.

I.R.C. § 212. The Plaintiffs assert that the interest paid on the legacies qualifies

as an ordinary and necessary expenses under subsections (2) and (3) above. The Defendant contends that the interest was not an ordinary or necessary expense nor was it incurred for the purposes enumerated in subsections (2) and (3) of Section 212. First the Court will analyze whether the expense incurred was ordinary and necessary in this instance. Then the Court will go on to consider whether the expense was incurred for one or more of the purposes provided in the statute.

### A. Whether the Interest Expense Incurred on the Deferred Legacies was Ordinary and Necessary

Treasury Regulation § 1.212–1(d) states that:

> [e]xpenses, to be deductible under section 212, must be "ordinary and necessary". Thus, such expenses must be reasonable in amount and must bear a reasonable and proximate relation to the production or collection of taxable income or to the management, conservation, or maintenance of property held for the production of income.

Subsection (i) of that same regulation states that:

> [r]easonable amounts paid or incurred by the fiduciary of an estate or trust on account of administration expenses, including fiduciaries' fees and expenses of litigation, which are ordinary and necessary in connection with the performance of the duties of administration are deductible under section 212, notwithstanding that the estate or trust is not engaged in a trade or business...

Treas. Reg. § 1.212–1(i).

Here, the Plaintiffs claim that the interest expense incurred on the legacies was ordinary and necessary to the administration of the estate. The Plaintiffs argue that the payment of interest on deferred legacies is a relatively common occurrence for an estate and thus constitutes an ordinary expense. The Plaintiffs further contend that the expense was necessary because the estate was forced to keep liquid assets and marketable securities in the estate to cover the unresolved issues regarding estate tax liability and other litigation involving in estate assets, namely the children's litigation discussed above. The Plaintiffs claim that preserving estate assets was necessary for proper administration of the estate.

■ The Court finds the Plaintiffs' argument unpersuasive. Under the facts presented, it was unnecessary for the estate to incur the interest charges at issue. As stated above, the terms of both the will and the trust directed that the estate taxes be paid out of trust, not probate, assets. The trust would have had more than sufficient assets to pay the liabilities of the estate if the trustees had not transferred all of the Schwan stock to the Foundation seven months after Marvin Schwan's death. The Plaintiff's contend that the transfer to the Foundation was done in accordance with the redemption agreement which directed that such securities be transferred to the Foundation "upon the death of Schwan." *See* Redemption and Repurchase Agreement, Article 1, paragraph 5. Again, the Court cannot agree with the Plaintiffs' argument.

■ Under both Minnesota and South Dakota law, agreements that pertain to the same transaction that the are executed within the same time frame and involve the same parties are to be construed together. *See Simitar Entertainment, Inc. v. Silva Entertainment,* 44 F.Supp.2d 986, 994 (D.Minn.1999); *Anderson v. Kammeier,* 262 N.W.2d 366, 371 (Minn.1978); *Janssen v. Tusha,* 66 S.D. 604, 287 N.W. 501, 505 (1939). Applying this principle to the will, trust agreement, and redemption agreement leads to the inescapable conclusion that it was Marvin Schwan's intent that the Foundation be funded only after

the other obligations of his estate had been satisfied. A general directive in the redemption agreement stating that the stock was to be transferred to the Foundation "upon the death of Schwan" cannot override the specific directives of the trust agreement and the will which both directed that the trust pay the estate's liabilities, including estate taxes. The trust agreement itself stated that trust assets should be used to satisfy legacies under the will in the event that the probate assets were insufficient, indicating Schwan's intent that the gifts under the will be satisfied prior to the trust assets being gifted to the Foundation. The trust agreement also directed that all of the Schwan stock, except that which was used to satisfy a legacy, gift, or obligation under the will, be gifted to the Foundation. This statement clearly envisions that the obligations under the will would be satisfied prior to the funding of the Foundation. Therefore, when reading the three documents together, it is clear that Marvin Schwan's estate plan was drafted so that the Foundation would be funded last, and those administering his estate chose to frustrate that intent and fund the Foundation first.

Had the executors followed the dictates of Marvin Schwan's estate plan, they could have satisfied the legacies on time and would not have incurred the interest expense. At the time of his death, Marvin Schwan's probate estate contained assets totaling $19,018,311.47. The legacies that the estate failed to fully satisfy until 1998 totaled only $5.5 million. As the Defendant pointed out, the executors made a $5.1 million estimated estate tax payment out of probate assets although both the trust agreement and will directed that the estate taxes were to be paid out of trust assets. If the Schwan stock had not been transferred to the Foundation in contravention of Marvin Schwan's estate plan, the estate would have had sufficient assets to pay the legacies on time without concern for covering the other liabilities of the estate. Therefore, it was not necessary for the estate to incur interest expense on the legacies. *Cf. Hibernia Bank v. United States*, 581 F.2d 741 (1978)(disallowing an administrative expense deduction for federal estate tax purposes where the expense was unnecessary).

The Defendant claims that the Section 212 deduction is also unavailable to the estate because the expense was not incurred for the benefit of the estate, the taxpayer, but rather for the benefit of the Foundation. *See Klein v. C.I.R.*, T.C.Memo 1982–724, 1982 WL 11017 (1982)(holding that shareholder cannot deduct expenses that benefitted the corporation rather than the shareholder directly). In transferring the stock prematurely to the Foundation and using probate rather than trust assets to pay estate liabilities, the Foundation received more stock than it would have received had the dictates of Marvin Schwan's estate plan been followed. If in transferring the stock out of the estate to the Foundation, the estate was left with insufficient funds to pay the legacies and consequently incurred an interest expense on those legacies, the Defendant argues that the benefit inured to the Foundation. The Court agrees that under the facts of this particular case, the interest expense was not incurred to benefit the taxpayer estate, but rather to benefit the Foundation.

**B. Whether the Expense was Incurred for the Management, Conservation, or Maintenance of Property held for the Production of Income**

The Plaintiffs contend that the interest expense incurred on the deferred legacies was incurred to conserve the Schwan stock by preventing the forced liquidation of the estate's shares to pay estate liabilities and legacies. The Plaintiffs contend that un-

der Mr. Schwan's estate plan, the residuary of the estate would abate first and the specific bequest of Schwan's stock to the Foundation would abate second, and since stock was the primary asset of the estate, abatement of assets would not extend beyond the stock. Plaintiffs state that since the residuary of the estate would be insufficient to satisfy the liabilities of the estate, the fiduciaries were faced with liquidating the stock or paying interest on the legacies. Because they chose to pay interest on the legacies rather than liquidate the stock, the Plaintiffs argue that the interest expense was incurred to conserve property held for the production of income, the Schwan stock, and is thus deductible under Section 212. *See Ungerman Trust v. Comm'r.*, 89 T.C. 1131, 1987 WL 46821 (1987)(holding that interest paid on unpaid balance of federal estate tax liability was deductible under Section 212 when incurred to prevent forced liquidation of stock).

The Plaintiff's argument contains one fatal flaw: the estate did not own any Schwan stock during the tax year in question. As the Defendant correctly points out, all of the Schwan stock was transferred from the Schwan trust to the Foundation in December of 1993. Since the estate did not have an interest in the stock at the time the interest expense at issue was incurred, it cannot take a deduction claiming that the expense was incurred to conserve the stock. *See Hosbein v. C.I.R.*, T.C.Memo 1985–373, 1985 WL 14994 (1985)(finding that the taxpayer must have an existing interest in the property to take a deduction under Section 212(2)).

■ To rebut this critical fact, the Plaintiffs contend that the estate retained an interest in the stock that had been transferred to the Foundation because the estate had the right to recall the stock if necessary. For this proposition, the Plaintiffs cite to Exhibit L to the Affidavit of Gregory Weyandt which is an agreement between the Foundation, the estate and the Schwan trust in which the Foundation agrees to supply assets to the estate sufficient to pay the specific bequests in the will and the trust and the fees of the personal representatives. Although this agreement may purport to give the estate an interest in the assets of the Foundation, as the Defendant properly points out, the agreement was not entered into until March of 1998, two years after the tax year in question. The document, therefore, cannot give the estate any interest in stock for the tax year ending April 1996. The estate simply did not have any interest in the stock during the tax year in question and accordingly cannot claim that it paid interest on the legacies in that year to conserve an asset in which it had no interest. Under these facts, the estate is not entitled to a deduction under Section 212(2).

## C. Whether the Expense was Incurred in Connection with the Determination, collection, or refund of any tax.

Treasury Regulation Section 1.212–1(1) provides:

> Expenses paid or incurred by an individual in connection with the determination, collection, or refund of any tax, whether the taxing authority be Federal. State, or municipal, and whether the tax be income, estate, gift, property, or any other tax are deductible. Thus expenses paid or incurred by a taxpayer for tax counsel or expenses paid or incurred in connection with the preparation of his tax returns or in connection with any proceedings involved in determining the extent of his tax liability or in contesting his tax liability are deductible.

Treas. Reg. § 1.212–1(*l*).

The Plaintiffs claim that the interest expense on the deferred legacies was in-

curred in connection with the determination of the estate tax liability of Marvin Schwan's estate. The Plaintiffs allege that since the estate tax deficiency may have been as great as $415,480,079 and the cost of contesting such a deficiency could place a significant burden on the estate, the estate was forced to maintain the assets of the estate to contest and pay this potentially substantial deficiency and thus could not pay the legacies. As a result, Plaintiffs contend, the estate incurred the interest expense on the legacies that it could not afford to satisfy.

The Plaintiffs' position is a bit curious given that the legacies were satisfied long before the estate tax liability was determined. The Plaintiffs contend that the estate could afford to satisfy the legacies in 1998, although the estate tax liability was still at issue, because the Foundation had agreed to provide the proceeds necessary to satisfy all the estate expenses, including federal estate tax liability. To support this contention, the Plaintiffs cite to Exhibit L to the Affidavit of Gregory Weyandt. After a thorough review of Exhibit L, the Court must conclude that the Foundation did not, in fact, agree to accept the liability for estate tax.

In the agreement, the Foundation agrees to provide proceeds sufficient to satisfy the specific bequests under the will and trust and to pay the personal representatives fees. In addition, the Foundation also agrees to provide funds to pay administrative expenses associated with the probate proceedings in South Dakota. The agreement says nothing of the Foundation accepting the obligation to provide funds to satisfy all of the estate expenses and likewise says nothing of the Foundation agreeing specifically to pay the estate tax liability. Furthermore, the affidavit of Gregory Weyandt characterizes the agreement as one in which the Foundation agreed to provide proceeds for the payment of "specific bequests, interest and other administration expenses." *See* Affidavit of Gregory Weyandt, ¶ 12. He does not indicate that the Foundation accepted responsibility to pay the estate tax liability.

■ The Court finds that the Plaintiff's argument that the interest incurred on the deferred legacies was incurred in collection with the determination of a tax must fail. If, in fact, the estate needed to maintain its assets to contest and pay any potential estate tax deficiency, the assets would need to be conserved until the estate tax was determined. Here, the legacies were paid years before the estate tax liability was settled, and contrary to the Plaintiffs' contention, no other party had assumed the liability for that estate tax. Therefore, even if the tenuous connection advanced by the Plaintiff between the interest expense incurred here and the determination of estate tax were sufficient for purposes of I.R.C. Section 212(3), an issue the Court chooses not to resolve but finds unlikely, under the true facts of this case such a connection is lacking. The estate simply did not incur the interest expense on the legacies in connection with estate tax liability. If that were the case, the interest would still be accruing today because as far as the Court is aware, the estate tax liability is still undetermined, and given the Plaintiffs' position, the legacies would have to remain unpaid.

## II. Whether a Deduction is Available under I.R.C. Section 163

Section 163(a) of the tax code provides that "[t]here shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." I.R.C. 163(a). This section, however, is limited by the language of Section 163(h)(1) which states that "no deduction shall be allowed under this chapter for personal interest

paid or accrued during the taxable year." *See* I.R.C. 163(h)(1). Subsection (h) of I.R.C. 163 defines personal interest in all inclusive terms as "any interest allowable as a deduction under this chapter other than -..." and goes on to list a few exceptions. *See* I.R.C. 163(h)(2). The exception at issue here deals with the deductibility of investment interest. *See* I.R.C. 163(h)(2)(B). Subsection (d)(3)(A) of I.R.C. 163 defines investment interest as "any interest allowable as a deduction under this chapter ... which is paid or accrued on indebtedness properly allocable to property held for investment." *Id.*

■ The Plaintiffs contend that the interest paid on the deferred legacies is deductible under I.R.C. Section 163 as investment interest. The Plaintiffs assert that absent liquidating the investment assets of the estate, the legacies could not be satisfied. Therefore, the executors chose to incur the interest expense under South Dakota law on the deferred legacies rather than liquidate the income-producing assets of the estate to satisfy the legacies. The Plaintiffs argue that since the interest expense was incurred to maintain investment property, it is properly allocable to property held for investment and qualifies as deductible investment interest. The Court cannot agree.

As the Court has previously found, during the tax year in question, 1996, the estate did not own any Schwan stock. Therefore, maintaining the Schwan stock as an investment cannot serve as a reason for the estate to incur the interest expense at issue. Absent the Schwan stock, however, the estate still had other assets producing significant income. During the year in question, the probate estate earned $480,717.58 in interest on municipal bonds, treasury bills and notes, and a money market account. The probate estate also earned $106,391.04 in dividends on American Municipal Term stock. Therefore, the

estate did earn substantial income on investment, and at least part of that income was earned because the executors chose not to pay the $5.5 million in legacies but rather retain those assets in the estate. It would be absurd, however, to conclude that such a scenario allowed for an interest expense deduction on the interest incurred on the deferred legacies.

■ First, the legacies are not properly characterized as "indebtedness" in this instance. The legacies do constitute obligations of the estate, but they were not incurred by the estate as debts. They were not incurred by the executors in managing and operating the estate nor were they debts of the testator. Rather, they were created by the testator to devise his property upon his death. Furthermore, the job of the executors of the estate was not to retain the estate assets so that the assets would produce investment income, but rather to dispose of the assets in accordance with the decedent's estate plan. Here, Marvin Schwan will's directed that $1 million be paid to each of his four children and $1.5 million be placed into a trust for his grandchildren. Rather than comply with his wishes, the executors of the estate held the property in the estate and incurred substantial interest expense at a rate of 12% to the legatees under South Dakota law. Under these circumstances, the interest incurred on the deferred legacies cannot be characterized as interest paid "on indebtedness properly allocable to property held for investment."

Second, the Plaintiffs have made no effort to trace the interest expense at issue to a debt which was created in connection with maintaining investment property. Section 1.162–8T of the Treasury Regulations establishes the rules for allocating interest expense among expenditures. The regulation provides that "[i]n general, interest expense on a debt is allocated in

the same manner as the debt to which such interest expense relates is allocated. Debt is allocated by tracing disbursements of the debt proceeds to specific expenditures." *See* Treas. Reg. § 1.163–8T(a)(3). In the case of investment interest, the interest expense allocated to an investment expenditure is treated as investment interest. *See* Treas. Reg. § 1.163(a)(4)(C). The regulation defines investment expenditure as "an expenditure (other than passive activity expenditure) properly chargeable to capital account with respect to property held for investment … or an expenditure in connection with the holding of such property." *See* Treas. Reg. § 1.163(b)(3). Here, there is no investment expenditure and no debt proceeds to trace.

The legacies, upon which the interest at issue was incurred, did not arise in connection with the acquisition or maintenance of property held for investment purposes. This is not a situation in which the estate incurred a debt such as a loan to maintain investment property already in the estate. Here, the purported debt at issue was not incurred as an expenditure of the estate but rather was created as on obligation of the estate by the testator in the form of a legacy. As such it has no connection to property held for investment and a deduction under I.R.C. § 163 is inappropriate.

### III. Whether the Estate Paid the Expense During the Tax Year in Question

The Defendant filed a supplemental brief in opposition to the Plaintiffs' motion for summary judgment arguing that even if the interest expense paid on the deferred legacies was properly deductible under I.R.C. § 212 or I.R.C. § 163, in this case no such deduction would be available to the Plaintiffs because the interest expense at issue was not paid during the tax year in question. According to a letter from Gregory Weyandt, Plaintiffs' counsel,

to Donald Dowie, Defendant's counsel, the estate used the cash-basis method of accounting. *See* Declaration of Donald N. Dowie, Ex. 4. As a cash-basis taxpayer, the estate must have actually paid the expense before it can deduct the expense. *See* I.R.C. § 7701(a)(25); Treas. Reg. § 1.446–1(c)(i); *see also Walter v. Commissioner*, T.C.Memo 1979–132, 1979 WL 3217 (1979)(*citing Rink v. Commissioner*, 51 T.C. 746, 754, 1969 WL 1676 (1969)). The Defendant contends that the facts establish that the estate did not pay the interest expense until 1998.

The Defendant relies on the deposition testimony of Burgdorf to establish that the estate did not pay the interest expense during the tax year ending in April 1996. Burgdorf in fact testified that the interest on the legacies accrued and was not paid until the legacies themselves were satisfied in 1998. This fact, however, is contradicted by the annual account for the fiscal year ending April 30, 1996. According to Schedule 9 of the Third Annual Account, the estate paid $108,000 in interest to each of the four children during the year in question. *See* Affidavit of Gregory M Weydant, Ex. M.

Based upon the conflicting evidence on this point, the Court finds that summary judgment would not be appropriate with respect to this issue. Given that the interest payments are not deductible under I.R.C. § 212 or I.R.C. § 163, however, the year in which the interest was paid is irrelevant. Even if the interest were paid during the tax year in question, such payments would not be deductible under the Internal Revenue Code. Accordingly, the Court finds that summary judgment is still proper despite this disputed factual issue. *See Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992)("[T]he mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment… In-

stead, 'the dispute must be outcome determinative under prevailing law,'") (quoting *Holloway v. Pigman,* 884 F.2d 365, 366 (8th Cir.1989))(other citation omitted).

## IV. Defendant's Motion to Strike Portions of Plaintiffs' Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment

The Defendant has filed a motion requesting that the Court strike various portions of the Plaintiffs' statement of facts in support of Plaintiffs' motion for summary judgment. The Defendant bases this motion on Fed. R. Civ. 56(e) which requires that affidavits supporting summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Id.* The Defendant argues that some of the statements contained in the Plaintiffs' statement of facts constitute inadmissible hearsay and lack proper foundation.

First, the Defendant argues that the second and third sentences of paragraph three should be stricken as they are only supported by the declaration of the Plaintiffs' attorney. The statements at issue are the following:

> The co-executors determined that the Estate would have a deficiency if all specific bequests were paid in full, along with the federal and state estate tax obligations and all other administration expenses. Accordingly, the co-executors could not satisfy the cash legacies until the Estate satisfied- or determined the manner in which it would satisfy obligations having higher priority under applicable federal and state law and under the decedent's estate plan.

*See Plaintiffs' Statement of Undisputed Material Fact in Support of Moiton for Summary Judgement,* Docket # 24, ¶ 3.

The Defendant also desires to have a portion of paragraph four stricken again regarding the purported inability of the estate to satisfy the remaining legacies, a fact for which Plaintiffs fail to cite to the record to support. *See id.* ¶ 4. The final statement at issue is contained in paragraph six regarding the litigation brought by the Schwan children against the Schwan company and its officers regarding the amendment of the redemption and repurchase agreement. Without citation to the record, the Plaintiffs indicate that the value of the Schwan stock was a "central issue" in that litigation.

It is the finding of the Court, given the above discussion regarding the deductibility of the interest on the deferred legacies under the Internal Revenue Code, that even if the statements at issue were admissible and met the requirements of Rule 56(e), they would not change the result reached by the Court regarding the Plaintiffs' motion for summary judgment. Throughout the above discussion the Court has considered the Plaintiffs' contention that the estate had insufficient assets to pay the legacies as well as the other obligations of the estate. The Court found this position unsupported by the evidence. With respect to the assertion that the value of the Schwan stock was a "central issue" in the children's litigation, the Court finds that fact of little consequence. Therefore, the Court will deny the motion to strike as moot in light of the fact that it considered the statements in ruling on the Plaintiffs' motion. Accordingly,

IT IS ORDERED:

(1) that Plaintiffs' Motion for Summary Judgment, Doc. 22, is denied;

(2) that Defendant's Motion for Summary Judgment, Doc. 32, is granted;

(3) that Defendant's Motion to Strike Portions of Plaintiff's Undisputed Statement of Material Facts, Doc. 36, is denied as moot;

(4) that Defendant's Motion to Take Trial Depositions of Plaintiffs, Doc. 53, is denied as moot;

(5) that Defendant's Motion for Additional Discovery under Rule 56(f), Doc. 38, is denied as moot;

(6) that Defendant's Motion to Compel Production, Doc. 16–1, Motion to Compel Plaintiffs to Attend Their Depositions, Doc. 16–2, Motion to Deem Requests for Admissions as Admitted, Doc. 16–3, and Motion for Costs and Fees under Rule 37, Doc. 16–4, are all denied as moot;

(7) that Plaintiffs Motion under Rule 36 for Order Extending Time to Respond to Defendant's Requests for Admissions or Permanent Withdrawal and Amendment of the Admissions, Doc. 19, is denied as moot;

(8) that Defendant's Motion to Extend Dispositive Motion Deadline, Doc. 27, is denied as moot.